**In re UNDERGROUND UTILITIES CONSTRUCTION CO., INC., Debtor.**

**Bankruptcy No. 80–00326–BKC–TCB.**

United States Bankruptcy Court, S. D. Florida.

Aug. 21, 1981.

Martin L. Sandler, Miami, Fla., Paul Thibadeau, Palm Beach, Fla., for debtor.

Daniel L. Bakst, West Palm Beach, Fla., for Creditors Committee.

Ira F. Gropper, Miami, Fla., U. S. Atty. Office.

Joel M. Aresty, Miami, Fla., for Ameri-First.

## ORDER ON FEE APPLICATIONS

THOMAS C. BRITTON, Bankruptcy Judge.

This chapter 11 case is here for confirmation of the debtor's plan and consideration of three fee applications. The applications, by the debtor's two attorneys and counsel for a creditors' committee, request a total of $59,300 plus expenses, $7,500 of which was paid as retainers on the eve of bankruptcy. (C.P. Nos. 104b, 107a and 118). The debtor's last cash flow report showed less than $44,000 balance on hand for all purposes. No question was raised as to any of these applications when they were heard on July 7.

The debtor builds water, sewer and storm drainage for land developers. It has debts of $1.4 million and a claimed going concern value barely equal to that sum. Its plan is to pay its unsecured creditors in quarterly prorata distributions over five years from 50% of its "net cash flow". Its net cash flow during the year it has been in this court has accumulated less than $35,000. The debtor owes $792,000 in unsecured debts. Because of record interest rates, the land development business in this area is at or near its lowest ebb for at least 30 years.

It is clear, therefore, that the creditors who accepted this plan did so only because the liquidation of this beleaguered business would net them nothing and the hope of some recovery, however slim, is better than nothing. Many, if not most bankruptcy reorganizations offer no more. I am confirming the plan by a separate order.

In such a case, creditors cannot afford to spend time or money opposing fee applications. The desperate owner of the debtor is in no position to object. He has no time to shop around and if he questions the quoted fee, he may wind up with no attorney. The attorneys involved in the case are traditionally reluctant to question another attorney's fee application. It is for this reason that 11 U.S.C. § 330(a)(1) makes it the court's responsibility to scrutinize all fee applications, whether they are opposed or not.

Section 330(a)(1) pinpoints the seven factors to be considered in fixing compensation under the Code:

"... the court may award reasonable compensation for *actual, necessary* services ... based on the *time*, the *nature*, the *extent* and the *value* of such services, and the *cost of comparable services* other than in a case under this title..." (Emphasis supplied.)

■ If, as is the case here, the debtor has already agreed to the fee for one of its attorneys, and if that fee is excessive, this court must disregard the agreement and order its cancellation or, if it has been paid, its return. § 329(b).

The notion that "economy is the most important principle", which developed under the former Act, has been abandoned. *Matter of U. S. Golf Corp.*, 5 Cir. 1981, 639 F.2d 1197, 1201. This does not mean that conservation of the estate and economy of administration are no longer a concern of the court. It means that such concern may not arbitrarily limit compensation to the point that it deprives the court and the parties of the best available legal services. 2 *Collier on Bankruptcy* (15th ed.) ¶ 330.-05[2][e]; 2 *Bankruptcy Service Lawyers Edition* § 13:58.

The only other departure in the Code from the standards prescribed under the former Act, *Matter of First Colonial Corp. of America*, 5 Cir. 1977, 544 F.2d 1291, is a matter of emphasis. Seven factors have replaced the 12 identified in *First Colonial.* However, those seven embrace all but the last two of the 12 in *First Colonial.*

Bankruptcy Rule 219 requires that each applicant set forth "a detailed statement of (1) the services rendered". *First Colonial* underscores this duty:

"To this end, each attorney seeking compensation should be required to file a statement which recites the number of hours worked and contains a description of how each of those hours was spent." Supra, p. 1299.

This rule remains applicable. Pub.L. 95–598 § 405(d); 2 *Collier on Bankruptcy* (15th ed.) ¶ 330.05[2][a] n. 3.

■ It is the applicant's burden to establish the value of his services. *Matter of U. S. Golf Corp.*, supra p. 1207. Where the applicant does not keep or submit the required records, the court must resolve every doubt against the applicant. *Matter of Meade Land & Development Co., Inc.*, 3 Cir. 1978, 577 F.2d 858; *In re Hudson & Manhattan Railroad Co.*, 2 Cir. 1964, 339 F.2d 114, 115.

With these guidelines in mind, we turn to the applications.

*Debtor's attorneys.* Martin L. Sandler's employment as the debtor's attorney was authorized when this case was filed in March, 1980. He received a retainer of $2,500 and the debtor agreed to pay him a total of $25,000 for his services. His application, which seeks approval of that agreement, does not comply with B.R. 219. It furnishes no information other than the client's agreement to pay a $25,000 fee irrespective of the effort required or the results achieved.

At the hearing, Sandler was asked how much time he spent on this matter. He did not know, but reported by a letter dated July 9 that he had spent 97.1 hours and anticipated spending another 12 hours.

I have reviewed each of the 122 pleadings that form the record of the case. The adversary litigation, handled almost exclusively by Special Counsel, consists of 14 other files, which I have also reviewed. The time spent by Sandler in this case is excessive in light of the work reflected in the file and observed by me, even after making a generous allowance for negotiations with creditors. Special Counsel has documented the fact that he spent much of his time performing these negotiations. I assume, therefore, that much of Sandler's time was spent in unnecessary or duplicated services, such as accompanying and assisting Special Counsel in the extensive litigation the latter was hired to conduct. 2 *Collier on Bankruptcy* (15th ed.) § 330.03[2] n. 3. I find that the time reasonably necessary to perform the actual services furnished by the debtor's counsel in this case to its conclusion is 80 hours.

This case presented no novel question and no unusual difficulty. The services could have been performed by any attorney reasonably familiar with the requirements for a chapter 11 reorganization.

Sandler's services consisted essentially of advising his client of its duties and options formulating a plan, preparing a disclosure statement, soliciting acceptance, and completing forms required by the clerk to monitor the debtor's cash flow, the creditors' votes on the plan, the accomplishment of the plan and the closing of the case. The objections to claims in this case were negligible and obvious. Because of the immediate retention of Special Counsel, Sandler litigated only one matter for the debtor, a minor dispute with a Ford agency. He was able to accomplish little for the client in that matter. In short, the extent of the services rendered in this instance was less than those usually provided by debtor's counsel in reorganization.

There is no clear measure of the value of Sandler's services here. He made it possible for his client to avoid liquidation, at least presently. He collected no assets. He defended no litigation. He achieved no significant amelioration of secured debt. The result in this instance was not remarkable in view of the creditors' alternatives.

■ Sandler is among the most experienced bankruptcy specialists in this State. His time, in this area during the pendency of this case was worth between $100 and $150 an hour. Because much of that work could have been and should have been done by a junior associate or paralegal assistant, the cost of comparable services would have been less. The fact that an experienced attorney elects to perform services which could be performed by others far less experienced does not increase the value and should not increase the cost of those services. 2 *Collier on Bankruptcy* (15th ed.) § 330.07[3] n. 5.

■ I find that $10,000 is reasonable compensation for Sandler's services.

On May 9, 1980, Paul Thibadeau, who had been the debtor's counsel before bankruptcy, was authorized as special counsel:

". . . only to the matters as set forth in the Application for Appointment of Special Counsel filed in these proceedings or such other similar representations as may from time to time be required." (C.P. No. 18).

The Application specifies that Thibadeau was employed to represent the debtor "in certain transactions which are not related to Bankruptcy Proceedings", specifically (a) prosecution of lawsuits in which the debtor is plaintiff, two state court actions removed to and subsequently dismissed by this court, and (b) "pursuit of various claims for moneys due and owing to [the debtor] in which complaints have not yet been filed." (C.P. No. 11).

■ Thibadeau has filed a comprehensive and detailed application. (C.P. No. 104). He seeks $27,000, of which he received $5,000 as a retainer, together with $695 in expenses. He has spent 314.5 hours in a total of 17 assignments identified in his application, pages 1–5. Only items 2, 3, 5, 6, 10, 11, 14, 15 and 17 fall within the scope of his employment. I have omitted allowance for item 8, an effort to recover $188,000 from AmeriFirst which was foreclosing its first mortgage. That claim was so ponderous and so devoid of merit it bordered on the frivolous. It accomplished nothing. It was worth nothing. See Adversary Proceeding 80–0177, Order of October 27, 1980. (C.P. No. 21).

■ These items account for 68 hours for which he asks $6,325 at various billing rates averaging $93 an hour. He has identified $46,150 as accounts recovered for the debtor in this connection. I find the charges for these services reasonable.

■ The remaining charges were unauthorized and a duplication of Sandler's assignment, including negotiations with creditors, attendance at bankruptcy hearings unrelated to his collection litigation, and the filing of notices in suits against the debtor advising of bankruptcy and its automatic stay. As to such matters he was a volunteer and must look to Mr. Sandler for compensation, not to the debtor's estate.

■ His expenses of $695 are allowed.

*Attorney for creditors' committee.* Daniel L. Bakst's employment by the creditors' committee was authorized in April, 1980. He and the committee were active throughout this case. His services were necessary and valuable. His application complies with the requirements of B.R. 219. It reflects that he spent 73 hours in this matter for which he seeks $7,300.

■ The application attributes 24 hours to 12 hearings held in this court. I have reviewed the court's records for each of those hearing dates. None of the hearings in this case required two hours. Most required but a few minutes. Although Bakst was in attendance in this court for at least two hours on each day because other matters were scheduled at the same hearing, he was involved in many other matters on each of these calendars. Only a prorata share of his total attendance time is chargeable to this case. I find that a reasonable allocation of his time for the 12 hearings in this case is six hours. With this adjustment, I find that reasonable compensation for Bakst's services in this case is $5,500.