**In re COASTAL EQUITIES, INC., a California Corporation, dba Diversified Financial Systems, et al., Debtors.**

**Bankruptcy No. 82–01744–M11.**

United States Bankruptcy Court,
S.D. California.

March 30, 1984.

M. James Lorenz, Trustee.

Keith E. McWilliams, David P. Curnow, Jennings, Engstrand & Henrikson, San Diego, Cal., for trustee.

Robert Ames, Gray, Cary, Ames & Frye, San Diego, Cal., for debtor.

William Brockett, Keker & Brockett, San Francisco, Cal., for Miller, Boyko & Bell.

Patrick C. Shea, Kathryn Lori Partrick, Luce, Forward, Hamilton & Scripps, San Diego, Cal., for Class A Creditors Committee.

Frederick Martin, Jr., Christison, Martin & Oggel, San Diego, Cal., for Class B Creditors Committee.

## AMENDED OPINION REGARDING ATTORNEY FEES REQUESTED BY MILLER, BOYKO & BELL

JAMES W. MEYERS, Bankruptcy Judge.

### I

### INTRODUCTION

Coastal Equities, Inc., is a California corporation which had as its principal business the generation of capital for the acquisition and sale of interests in real property. An involuntary petition under Chapter 7 of the

---

1. For a more detailed background of the debtor and the proceedings, see *In re Coastal Equities, Inc.,* 33 B.R. 898, 11 B.C.D. 62 (Bkrtcy.S.Cal. 1983) (Opinion Regarding Confirmation of Plan).

Bankruptcy Code ("Code") was filed against Coastal Equities on April 22, 1982. The involuntary petition was converted by the debtor to a Chapter 11 proceeding on June 4, 1982.

On June 28, 1982, an Order was entered appointing Mr. M. James Lorenz as Chapter 11 Trustee. Mr. Lorenz was appointed Trustee due, in part, to gross mismanagement and a general lack of faith and trust in the debtor as then constituted.[1]

Subsequent to the appointment of the Trustee, the law firm of Miller, Boyko and Bell ("Applicant") applied to the Court for appointment as attorney for the debtor. For some reason, on June 28, 1982, an "Affidavit of Disinterest" was filed by Mr. Roy M. Bell, a name partner of the Applicant, but was unaccompanied by either an application to be employed as an attorney or an order. On July 21, 1982, an application was entered on behalf of Applicant and the law firm of Gray, Cary, Ames & Frye, but the order submitted only appointed Gray, Cary, Ames & Frye as special bankruptcy counsel to debtor-in-possession. Finally, on August 3, 1982, another identical "Affidavit of Disinterest" was filed by Mr. Bell, this time accompanied by an Order and on August 3, 1982, the Applicant was authorized to represent the debtor *nunc pro tunc* as of April 28, 1982.

On December 13, 1982, the Applicant filed this application for interim allowance of $114,948.50 in fees and reimbursement of $1,724.26 in expenses incurred in its representation of the debtor, covering the period of May 4, 1982 through October 28, 1982. The Trustee objected to the awarding of any interim fees, arguing that there was a duplication of effort on the part of the applicant and co-counsel, Gray, Cary, Ames & Frye, and raising the charge that there was an undisclosed conflict of interest between the Applicant and the estate.[2]

---

2. The Applicant argues that the Trustee may not raise the issue of conflict of interest, since having failed to act sooner, the Trustee has waived its right to object on that ground. The Applicant claims that, early in the Chapter 11 pro-

Gray, Cary, Ames & Frye received a percentage of its requested fees as interim compensation, but no fees were awarded the Applicant pending resolution of the conflict issue. Accordingly, the hearing was continued from time to time and finally came on for a full hearing on October 20, 1983. At the hearing, the Court heard argument of counsel and the testimony of Mr. Lorenz. At the conclusion of the hearing, the matter was taken under submission. This Opinion announces the Court's decision.

## II

## FACTS

The facts giving rise to the allegation of conflict of interest can best be culled from the pleadings and affidavits filed on behalf of the Applicant in support of the fee application. In an affidavit, filed October 14, 1983, Mr. Bell concisely outlines the following relationships which existed between himself, his firm, the debtor, and the president and sole shareholder of the debtor, Mr. Phillip L. Jauregui. Miller, Boyko and Bell had, from time to time, represented Mr. Jauregui individually as well as various business projects in which Mr. Jauregui had an interest. From this representation, a personal and business relationship was established. Members of the firm had personal investments involving Mr. Jauregui, and Mr. Bell, along with another member of his firm, were partners with Mr. Jauregui in certain real estate projects. It is the Trustee's position that these projects benefited directly from the wrongful manipulation of Coastal Equities investors' funds. This has been a reoccurring theme throughout this Chapter 11 proceeding. *See In re Coastal Equities, Inc., supra,* 33 B.R. at 900, 11 B.C.D. at 64.

Mr. Bell also enjoyed what was termed a "close personal relationship" with a Ms. Kathleen Durr of Coastal Equities. Ms. Durr was an officer and the chief operating officer of Coastal Equities. This is not all. Perhaps most significant was the fact that the Applicant's own office building was owned by a partnership in which Mr. Jauregui and members of the Applicant were partners. This partnership obtained a construction loan through Coastal Equities, which was used to refurbish the firm's offices. The monies for the loan were obtained from Coastal Equities' investors. In return, Coastal Equities received a 15% brokering fee. Rental payments were made by the Applicant to Coastal Equities until February 1982. The Trustee argues that the internal manipulation of investors' funds, accomplished by Mr. Jauregui and Ms. Durr, may have given rise to a cause of action which would have necessarily been needed to be brought on behalf of the estate against the Applicant, the very firm representing the debtor. A conflict in such a case becomes self evident. Finally, Coastal Equities would offset rent or note payments owed by the Applicant to trust deed investors against legal fees owed to the Applicant. This practice, it is argued, may have resulted in a preference being given to the Applicant.

## III

## DISCUSSION

A. *The Legal Standards For Appointment as Attorney.*

 Federal Rule of Bankruptcy Procedure 215 requires as a condition to be employed as an attorney for a debtor-in-

ceedings, the Trustee as well as co-counsel, was fully informed regarding the numerous connections. Reliance is now made upon this disclosure to raise the waiver argument and as evidence that the failure to inform the Court was inadvertent and not the result of an attempt to mislead the Court. While the Court neither desires to, nor is required to make a finding as to the state of mind of the Applicant, it does

find that the waiver argument is without merit. There exists an independent duty to comply with the Code and Rules, and fully inform the Court. This was the Applicant's responsibility and it was not discharged by informing those who were not in a position to judge the fitness of an attorney for employment. Only the Court can make such a determination, and it has not granted a waiver.

possession, an order from the court.[3] *See In re Triangle Chemicals, Inc.,* 697 F.2d 1280, 1283 (5th Cir.1983). The order is made upon application stating to the best of the applicant's knowledge all of the attorneys' connections with the debtor, the creditors, or any other party in interest. If, after such disclosure, the court determines that the attorney does not hold any interest adverse to the estate, and that his employment is in the best interest of the estate, the court may authorize his employment. If, however, an attorney holds an undisclosed adverse interest, the court is empowered to deny all compensation and reimbursement of expenses. *See* Former F.R.B.P. 215(b); *In re Arlan's Dept. Stores, Inc.,* 615 F.2d 925, 932 (2d Cir.1979) (Act Case). It is the duty of the attorney to reveal all connections. Rule 215 does not give the attorney the right to withhold certain information on the grounds that, in the attorney's opinion, the connection is of no consequence or is not adverse. *See In re Haldeman Pipe & Supply Co.,* 417 F.2d 1302, 1304 (9th Cir.1969); *In re Arlan's Dept. Stores, Inc., supra,* 615 F.2d at 932. If the duty to properly disclose is neglected, however innocently, the attorney performs services at his peril. Should the undisclosed interest turn out to be adverse, or if appointment of this attorney would not have been in the best interest of the estate, the court is empowered to take the punitive measure of denying all compensation. *See In re Rogers-Pyatt Shellac Co.,* 51 F.2d 988, 991 (2d Cir.1931); *In re Haldeman Pipe & Supply Co., supra,* 417 F.2d at 1304.

Code Section 327 requires a proposed attorney to be a disinterested person. "Disinterested person," as defined in Section 101(13), is a person that is not a creditor and, among other things, does not have a materially adverse interest to the estate by reason of any direct or indirect relationship to, or connection with the debtor.

 Finally, aside from the statutory duties outlined above, it is a well established principle that those performing duties in the administration of an estate are doing so as officers of the court. *Official Creditors' Committee of Fox Markets, Inc. v. Ely,* 337 F.2d 461, 465 (9th Cir.1964); *York International Building, Inc. v. Chaney,* 527 F.2d 1061, 1068 (9th Cir.1975). Consequently, an attorney for a debtor-in-possession is an officer of the court and as such, unquestionably has a duty to be perfectly candid regarding his fitness to perform his duties. This would necessarily require a full disclosure of any connection which may have any bearing on his disinterest.

### B. The Applicant's Conduct.

As mentioned above, Mr. Bell filed two declarations, each captioned, interestingly enough, "Affidavit of *Disinterest*," (emphasis added). In these identical declarations, Mr. Bell indicated that his firm did not represent any creditor of the estate, nor any interest adverse to the debtor. There was not a scintilla of disclosure regarding the extensive and involved relationships between the Applicant, Mr. Jauregui, and the debtor. Such a revelation would surely have served to highlight the matter of "disinterest" in determining whether this firm was capable of adequately representing the debtor-in-possession and all of the concerned creditors. Mr. Bell's failure to fully disclose the connections put his firm in the position of performing services at the risk of being denied compensation.

---

**3.** Federal Bankruptcy Rule 215 was the rule which governed the matter at all relevant times. Although the text of the Rule indicates that it is applicable to the employment of attorneys and accountants for a trustee, Rule 11–22 makes Rule 215 applicable in Chapter 11 cases to, *inter alia,* the employment of attorneys for debtors-in-possession. The enunciated rationale for this is that such an attorney will be compensated from the estate. Accordingly, there should be some supervision by the court over the original employment.

Rule 215 was superseded on August 1, 1983 by new Bankruptcy Rule 2014. New Rule 2014 retains the requirement of disclosure of all connections between the proposed attorney and the debtor, creditors or any other interested party.

This Court cannot perceive how, given the relationships and dealings of the parties, this Applicant could effectively represent all classes of creditors, equity security holders and the debtor. As seen from the serious and numerous charges of misapplication of investors' funds which have been raised by the Trustee, this case is of such a sensitive nature that adequate representation of the estate would necessarily require disinterest beyond reproach.

██ The requisite showing for approval of employment was not properly made by this Applicant. Had the Court been fully and properly informed, it would have held that this Applicant could not represent the debtor-in-possession due to the conflicting interests present and because it would not have been in the best interest of the estate. A debtor-in-possession, as well as its counsel, owe undivided loyalty to the estate.[4] The connections present in this case would undoubtedly have impinged on the Applicant's independence. Failure to reveal the substantial associations seriously misled the Court. Accordingly, the Order appointing Miller, Boyko and Bell as attorney for debtor is vacated and cannot form the basis for any fee request for fees incurred while representing the debtor-in-possession.

██ In addition to their statutory duties, as officers of the court, the Applicant had an obligation to disclose. In all cases, persons who seek compensation for services or reimbursement of expenses do so as officers of the court and, as such, are held to fiduciary standards. *Brown v. Gerdes*, 321 U.S. 178, 182, 64 S.Ct. 487, 489, 88 L.Ed. 659 (1944); *York International Building, Inc. v. Chaney, supra*, 527 F.2d at 1068–69; *In re Arlan's Dept. Store, supra*, 615 F.2d at 932; *In re Rea Holding Corp.*, 2 B.R. 733, 736, 5 B.C.D. 1308, 1310

(D.C.S.D.N.Y.1980). Reasonable compensation necessarily implies "loyal and disinterested service in the interest of those for whom the claimant purports to act ... and it is no answer to say that fraud or unfairness were not shown to have resulted." *Woods v. City National Bank and Trust Co. of Chicago*, 312 U.S. 262, 268, 61 S.Ct. 493, 497, 85 L.Ed. 820 (1944). *See also Mosser v. Darrow*, 341 U.S. 267, 271, 71 S.Ct. 680, 682, 95 L.Ed. 927 (1951); *York International Building, Inc. v. Chaney, supra*, 527 F.2d at 1069.

██ It is difficult to understand how an officer of the court, acting in a fiduciary capacity, could fail to disclose the significant connections which existed in this case. As stated by Justice Cardozo, it is only through strict enforcement of the rule of undivided loyalty that fiduciaries are kept at "a level higher than that trodden by the crowd." *Meinhard v. Salmon*, 249 N.Y. 458, 464, 164 N.E. 545, 546 (1928). Strict enforcement in this case requires a denial of all compensation or reimbursement of expenses for the period of time that the Applicant represented the debtor-in-possession.

██ Having established that the Applicant cannot be compensated for representing the debtor-in-possession, it must now be determined if the Applicant is entitled to collect for representing the debtor while it was not a debtor-in-possession. The involuntary Chapter 7 petition was filed on April 22, 1982 and was converted to a Chapter 11 on June 4, 1982. From June 4 through the date of the appointment of a trustee, June 28, the debtor was a debtor-in-possession. For this period of time, no compensation is awarded. For the periods of time prior to the conversion to a Chapter 11 and subsequent to the appointment of a

---

**4.** A debtor-in-possession is a fiduciary to the estate and it performs its duties for the benefit of the creditors. *See,* 11 U.S.C. Section 1107; *In re Hughes,* 704 F.2d 820, 822 (5th Cir.1983); *In re Modern Office Supply, Inc.,* 28 B.R. 943, 944, 10 B.C.D. 529, 530 (Bkrtcy.W.Ok.1983). As stated by the Supreme Court, "the debtor, though left in possession by the judge, does not operate

[the business] as it did before the filing of the petition, unfettered and without restraint." *Case v. Los Angeles Lumber Products Co.,* 308 U.S. 106, 126, 60 S.Ct. 1, 12, 84 L.Ed. 110 (1939). Likewise, any professional person employed by a debtor-in-possession is bound by this standard.

trustee, the debtor was not a debtor-in-possession. Prior to the conversion, the debtor was a debtor in a Chapter 7 liquidation case. After the appointment of the trustee, the debtor was a debtor out of possession. At both of these times, court approval of an attorney for the debtor is not required. *See 2 Collier on Bankruptcy,* ¶ 327.07 (15th ed.); *In re Designaire Modular Home Corp.,* 517 F.2d 1015, 1018–19 (3rd Cir.1975); *In re Mullendore,* 527 F.2d 1031, 1035 (10th Cir.1975); *In re Triangle Chemicals, Inc., supra,* 697 F.2d at 1289.

The Code authorizes the court to compensate such an attorney from the estate when the services performed were useful to the estate and did not duplicate the efforts of the trustee. 11 U.S.C. Section 330; *See also In re Designaire Modular Home Corp., supra,* 517 F.2d at 1019; *In re Triangle Chemicals, Inc., supra,* 697 F.2d at 1289. Accordingly, the Court must examine the fees and costs incurred during these two periods to determine the proper amount to award.

### C. Compensation for Representing the Debtor While Not In Possession.

Code Section 330 outlines seven factors which must be considered when deciding the issue of reasonableness.[5]

[T]he court may award reasonable compensation for *actual, necessary* services rendered ... based on the *time,* the *nature,* the *extent* and the *value* of such services and the *cost of comparable services* other than in a case under this title.

11 U.S.C. Section 330 [emphasis added]; *See also, In re Underground Utilities Const. Co., Inc., supra,* 13 B.R. at 737.

■ Procedurally, in order to be compensated, Rule 219 requires, as support for the request, a detailed statement of the services rendered. F.R.B.P. 219(a); *See also In re First Colonial Corp. of America, supra,* 544 F.2d at 1299; *In re Hotel Associates, Inc.,* 15 B.R. 487, 488 (E.Pa. 1981); 2 *Collier on Bankruptcy,* ¶ 330.-03[1] (15th ed.). The burden is on the person seeking compensation to establish the value of his services. *In re U.S. Golf Corp.,* 639 F.2d 1197, 1207 (5th Cir.1981); *In re Werth,* 32 B.R. 442, 444 (Colo.1983).

■ Finally, while an attorney for a debtor not in possession may be entitled to compensation from the estate, he comes before the court without being a court-appointed professional. This important distinction manifests itself in the types of services for which compensation may be made. Provided there was disinterested loyalty, considering the success of their efforts, and weighing the factors of Section 330, court-appointed attorneys are entitled to compensation whether or not any benefits were in fact conferred on the estate. An attorney for a debtor, not having been previously approved by the court, may only be compensated out of the estate to the extent his services actually benefitted the administration of the estate. *See In re Designaire Modular Homes Corp., supra,* 517 F.2d at 1019; *In re Rosen,* 25 B.R. 81, 84 (S.C.1982); *See also 2 Collier on Bankruptcy,* ¶ 330.04 (15th ed.).

With these guidelines in mind, the Court must now examine the fees requested for those periods of time for which the Applicant is entitled to be compensated.

■ It was with the assistance of co-counsel that the Applicant represented

---

**5.** Code Section 330 is the equivalent of Section 64(a) of the Code's predecessor, the Bankruptcy Act. Under the Act, a substantial body of case law has been built up regarding the reasonableness of fees. With only slight modifications, the Code is substantially similar to the Act. *See In re G.W.C. Financial and Insurance Services, Inc.,* 8 B.R. 122, 124, 7 B.C.D. 109 (Bkrtcy.C.Cal. 1981); *In re Underground Utilities Co., Inc.,* 13 B.R. 735, 737 (Bkrtcy.S.Fla.1981). Under the Act, there were twelve factors to which bank-

ruptcy courts often looked. *See In re First Colonial Corp. of America,* 544 F.2d 1291, 1298 (5th Cir.1977). These considerations have, for the most part, been embraced by Code Section 330 and remain applicable in determinations under the Code. *See In re Warrior Drilling & Engineering Co.,* 9 B.R. 841, 848, 7 B.C.D. 618, 622 (Bkrtcy.N.Ala.1981); *In re Underground Utilities Co., Inc., supra,* 13 B.R. at 737; *2 Collier on Bankruptcy* ¶ 330.05[2][a] (15th ed.).

the debtor.[6] In such a case, the Court must pay particular attention to the possibility of a duplication of effort which would result in the fees being unreasonable. Any duplication of services on the part of co-counsel is chargeable to the debtor, not the debtor's estate. *In re Underground Utilities Const. Co., Inc., supra,* 13 B.R. at 738. The present application reveals that at least 25% of the time spent was somehow expended in connection with co-counsel. For example, at the Section 341(a) first meeting of creditors conducted on July 16, 1982, the Applicant expended a total of approximately 30.5 hours. In addition to this, co-counsel appearing at the same meeting spent seven hours. On August 5, 1982, the Applicant spent 13 hours conferring in some respect with co-counsel, while co-counsel seeks reimbursement for the same meetings. Many hours were spent in so-called "strategy conferences." The Court is aware of the difference between duplication and coordination, but from the Court's own experience in setting reasonable fees, the Court cannot countenance such redundancy. Consequently, the request will be reduced by 12½%, which represents one-half of the time spent conferring with co-counsel.

As mentioned, the Applicant has the burden of establishing that it is entitled to the fees requested. This necessarily requires an application with sufficiently detailed records of time spent and on what it was spent. *See In re Beverly Crest Convalescent Hospital, Inc.,* 548 F.2d 817, 820 (9th Cir.1976); *Southwestern Media, Inc. v. Rau,* 708 F.2d 419, 427 n. 11 (9th Cir. 1983); *In re Lafayette Radio Electronics Corp.,* 16 B.R. 360, 361 (Bkrtcy.N.N.Y.1982); *In re Art Shirt Ltd., Inc.,* 30 B.R. 318 (Bkrtcy.E.Pa.1983). It is not unduly burdensome to set forth with specificity what the topic of research or conference was, and indeed many times the application is

quite precise (e.g., "prepare motion to dismiss," "prepare trial brief re injunctive relief," "telephone conference with [trustee's attorney] re cash flow problem of corporation"). On many occasions, however, the entry is not nearly so explicit. Often it is either vague or devoid of all information (e.g., "review file and prepare papers," "strategy conference," "review document re bankruptcy," "prepare documents re bankruptcy"). This absence of information amounts to a failure to sustain the required burden of proof and leads to a denial of 5% of the request, the amount represented by such inadequate entries. *See In re Nation/Ruskin, Inc.,* 22 B.R. 207 (Bkrtcy.E. Pa.1982) (helpful comparison of acceptable and unacceptable detail).

To be entitled to be compensated out of the estate, the efforts of an attorney for a debtor not in possession must have benefitted the administration of the estate. Much of the work performed by the Applicant did, in fact, benefit the estate and for these efforts, it is to be compensated. Much time was spent in preparation of a plan of reorganization which was unaccompanied by a disclosure statement and was never voted on. A plan which is not fully implemented or which fails is certainly worth less than a successful one and the attorneys should receive less for their efforts.[7] *See U.S.A. Motel Corp. v. Danning,* 521 F.2d 117, 119 (9th Cir.1975). It appears that approximately 35% of the Applicant's time was spent on researching, drafting and conferring on the plan. The Court concludes as a matter of fact that of this time, 50% was of value to the estate. Therefore, an award will be made of 50% of the time spent in connection with the plan.

Under the Code, bankruptcy courts are no longer required to set the rate of compensation at the low end of the

**6.** The Applicant is before this Court seeking $114,948.50 in fees for the period of May 4, 1982 through October 22, 1982. For this same span of time, co-counsel had accumulated approximately $98,000 in fees, for a total request by both firms representing the debtor, of $212,-948.50 or $1,720 per working day.

**7.** While a failed plan has less value, it does contribute something to the administration of the estate, albeit limited in worth. *See In re Tamarack Trail Co.,* 25 B.R. 259 (S.Ohio 1982).

spectrum of reasonableness. Instead, courts are now required to award a rate which is comparable to rates received in other than bankruptcy matters. 11 U.S.C. Section 330(a)(1); *See In re G.W.C. Financial and Ins. Services, Inc., supra,* 8 B.R. at 124, 7 B.C.D. at 109. Notwithstanding this, bankruptcy judges have wide discretion when determining fees. *See York International Building, Inc. v. Chaney, supra,* 527 F.2d at 1068; *In re First Colonial Corp. of America, supra,* 544 F.2d at 1298; *Southwestern Media, Inc. v. Rau, supra,* 708 F.2d at 422; *In re Auto-Train Corp.,* 15 B.R. 160, 161 (Bkrtcy.D.C.1981). In fixing the rate, ethical violations are unquestionably relevant since unethical conduct or conflicts of interest will, in many cases, lessen the value of services. *See In re Devers,* 12 B.R. 140, 142, 7 B.C.D. 277, 279

(D.C.1981). The problem of interested attorneys may manifest itself in a lack of speed when speed is essential, pursuing one course of action when another may be more beneficial, or a myriad of other shortcomings which are difficult to discern, but are detrimental to all. Given the fact that this Applicant was serving more than one master, it is the conclusion of the Court that its compensable services were not worth the sizable hourly rates for which they pray. The present request includes hours billed at a top rate of $150 progressing downward to $70. The overall average rate is $107. In light of the performance of the attorneys, the presence of conflicts of interests and to more accurately track the community standards for compensation for counsel with like training and experience, the billings are reduced as follows:

| Name | Present Status | Reduced Rate | Reduced Hours [8] | Total Fees |
|---|---|---|---|---|
| R. M. Bell | Attorney | $ 85.00 | 153.5 | $13,047.50 |
| D. P. Boyko | Attorney | 110.00 | 36.4 | 4,004.00 |
| T. D. Harper | Attorney | 80.00 | 4.7 | 376.00 |
| K. H. Knickmeyer | Attorney | 75.00 | 1.9 | 142.50 |
| H. P. Kondrick | Attorney | 60.00 | 3.7 | 222.00 |
| F. W. Paddison | Attorney | 75.00 | 164.5 | 12,337.50 |
| J. E. Schneider | Attorney | 110.00 | 91.0 | 10,010.00 |
| R. K. Schraner | Attorney | 80.00 | 10.6 | 848.00 |
| J. T. Waring | Attorney | 85.00 | 51.4 | 4,369.00 |
| W. Callahan | Legal Asst. | 30.00 | 28.2 | 846.00 |
| M. Feldman | Legal Asst. | 30.00 | 6.7 | 201.00 |
| D. Harrelson | Legal Asst. | 30.00 | 0.5 | 15.00 |
| T. McCarter | Legal Asst. | 30.00 | 16.1 | 483.00 |
| P. Meyer | Legal Asst. | 30.00 | 4.4 | 132.00 |
| L. Pollchik | Legal Asst. | 30.00 | 1.0 | 30.00 |
| | | TOTAL | 574.6 | $47,063.50 |

---

## III

## CONCLUSION

The Court will not award any fees out of the estate for the time the Applicant spent representing the debtor as a debtor-in-pos-

session. The attorneys who billed hours for this time will have their individual hours adjusted downward to reflect this.

Having reduced the request to hours spent only during those periods of time for

---

**8.** Hours for debtor-in-possession time period have been subtracted from individual attorneys'

hours before the 35% reduction.

which Applicant may be compensated, there remains a figure of 885 hours, billed at Applicant's normal hourly rates. The figure of 885 hours is decreased 35% to reflect the reduction of: (1) duplication of efforts of co-counsel (12½%); (2) poorly documented entries (5%); and (3) work on the plan without benefit to the estate (17½ %). The adjusted figure for hours which are compensable is then 574.6. Multiplying the hours spent by each attorney by the reduced hourly rate gives a total figure for compensation of $47,063.50. All expenses of $1,724.26 shall be awarded since none were incurred during that period of time when debtor was in possession. The attorney for the Trustee shall prepare and lodge an appropriate proposed Order within ten days of the filing of this Opinion.