**In re DAIKIN MIAMI OVERSEAS, INC., et al., Debtors,**

**DAIKIN MIAMI OVERSEAS, INC., Plaintiff–Appellant,**

v.

**LEE, SCHULTE, MURPHY & COE, P.A., Defendant–Appellee.**

No. 87–6026.

United States Court of Appeals, Eleventh Circuit.

March 28, 1989.

Myles J. Tralins, Miami, Fla., for plaintiff-appellant.

Thomas R. Lehman, Friedman & Lehman, Miami, Fla., for defendant-appellee.

Before HILL and FAY, Circuit Judges, and DUBINA *, District Judge.

DUBINA, District Judge:

This is an appeal from a final order of the United States District Court for the Southern District of Florida dismissing an appeal of a final order of a bankruptcy judge in a bankruptcy case referred to the bankruptcy judge pursuant to 28 U.S.C. § 157(a).[1] The bankruptcy court order appealed from is an order allowing final compensation to the appellee, Lee, Schulte, Murphy & Coe, P.A. (hereinafter "LSMC"), special litigation counsel to the appellant, Daikin Miami Overseas, Inc. (hereinafter "DMO"), a bankruptcy debtor.[2] The district court dismissed DMO's appeal of the bankruptcy court order because DMO had failed to raise its objections to the attor-

---

* Honorable Joel F. Dubina, U.S. District Judge for the Middle District of Alabama, sitting by designation.

1. Title 28, U.S.C. § 157(a) provides as follows:
   Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.

2. On October 24, 1985, DMO and five related entities filed voluntary petitions for reorganization under Chapter 11 of the United States Bankruptcy Code and were continued in the possession of their property and management of their business affairs as debtors-in-possession. Prior to the filing of its Chapter 11 petition, DMO acted as the exclusive distributor in South Florida and Central and South America of air conditioning equipment manufactured by Daikin Industries, Ltd. ("DKC"), a Japanese corporation. DMO, together with the five related entities, Daikin of Miami, Inc. ("DMOI"), Daikin De Puerto Rico, Inc. ("DPR"), M.I.D. Corporation ("M.I.D."), OTEC International, Inc. ("OTEC") and Omer T. Basar ("Basar"), were referred to collectively in the bankruptcy proceedings as "the debtors." All of the debtors were controlled and managed by Basar.

neys' fees requested by LSMC in the bankruptcy court below.

## I.  FACTS

Prior to the commencement of the bankruptcy proceedings which are the subject of this appeal, the debtors' sole supplier, DKC, had commenced litigation against them in the state courts of Florida seeking, *inter alia*, foreclosure, substantial money damages on loans receivable, and the appointment of a receiver to take control of the business operations of the debtors. The debtors retained LSMC to represent them in the state court proceedings. LSMC prepared a 10–count counterclaim against DKC for compensatory and punitive damages in the aggregate sum of $15 million.  In anticipation of the imminent appointment of a receiver in the state court action, on October 23, 1985, the debtors retained Ronald G. Neiwirth, Esq., for the purpose of filing Chapter 11 petitions on their behalf.  In this emergency situation, Neiwirth investigated, prepared, and filed separate Chapter 11 petitions for each of the debtors on October 24, 1985.

The bankruptcy schedules and statements of financial affairs, filed by the debtors, and the registers of proofs of claim, filed with the court against the debtors, revealed substantial secured and unsecured debt.  This included a secured claim in the approximate amount of $1.2 million in favor of Heller Financial, Inc. (hereinafter "Heller"), secured by various assets of DMO and other debtors including accounts receivable, inventory, furniture, fixtures and two condominiums owned by M.I.D. The schedules also reflected a separate secured obligation of $1.24 million to Heller, secured by a mortgage on a parcel of property owned by M.I.D.  Unsecured debt of DMO alone totalled in excess of $6 million, including obligations owed to DKC and its United States subsidiary, Daikin U.S. Corp. (hereinafter "DUS") (totalling in excess of $2.7 million), as well as obligations to the Bank of Tokyo, LTD ($2.5 million), the Saitama Bank, LTD ($800,000), and Borg Warner Acceptance Corporation ($500,000). The scheduled assets of DMO, consisting primarily of accounts receivable and inventory encumbered by the Heller lien, totalled only $3.1 million.

Immediately after the filing of the Chapter 11 petitions, counsel for the debtors was successful in negotiating a post-petition financing arrangement with Heller. This arrangement enabled the debtors to continue to use cash collateral on a limited basis to proceed with business operations and provided a mechanism for the reduction of Heller's debt through the continued collection of accounts receivable.  Further, subsequent to the filing of the Chapter 11 petitions, Neiwirth and LSMC investigated, researched, and filed three major adversary actions.[3]  After commencement and removal of the pending litigation involving the debtors, DKC, and DUS, substantial pretrial discovery proceeded in these actions. In addition, the parties, through their counsel, undertook lengthy settlement negotiations.

As a result of the efforts of Neiwirth and LSMC, a settlement was reached among the debtors, DKC, and DUS.  This settlement was approved by the bankruptcy court after notice and a hearing, by order dated April 11, 1986.[4]  The overall value of the settlement, taking into consideration not only the cash that was paid but also the waivers of obligations, approximated $8.5 million.[5]  After the bankruptcy

---

**3.**  These included separate preference actions against DKC and DUS, each seeking recovery of an amount in excess of $3 million, the removal of the action pending against the debtors brought by DKC, and a counterclaim prepared and filed against DKC and DUS by LSMC.  Additionally, a preference action was brought against Carrier Corporation.  The debtors prevailed in that action and on appeal.

**4.**  It is not necessary for us to elaborate on the intricate details of the settlement itself, but we

note that the settlement had the practical effect of leaving the Chapter 11 estates with a pool of cash and of discharging substantial secured and unsecured debt.

**5.**  It is undisputed that the settlement was extremely beneficial to the Chapter 11 estates and served as the predicate for the funding of liquidating plans of reorganization for DMO, Basar, and M.I.D.

court approved the settlement, a liquidating plan of reorganization was filed by DMO (the entity to bear the payment of the administrative expenses) and was confirmed by the court. The plan of reorganization provided for the payment in full of all classes of creditors, including unsecured creditors, who were to receive interest on their claims from the date of the filing of the Chapter 11 petitions.

By order of the court, the debtors had been authorized to employ Neiwirth as their bankruptcy counsel under a general retainer, with the compensation of Neiwirth to be fixed by the court consistent with 11 U.S.C. § 330.[6] The debtors had also sought and obtained approval from the court for the retention of LSMC as special litigation counsel in connection with the litigation and settlement of the actions against DKC and DUS. The debtors sought authority to retain LSMC in accordance with the terms and conditions of a pre-petition retainer agreement providing that LSMC would receive compensation for services rendered in the amount of $200.00 per hour, plus 25% of any and all sums received on behalf of the debtors by settlement, suit or otherwise, plus out-of-pocket expenses. The bankruptcy court approved the retention of LSMC, but reserved its right as provided under 11 U.S.C. §§ 328[7] and 330 to determine such firm's compensation upon appropriate application and hearing.

Neiwirth applied for an award of net final compensation for services rendered and out-of-pocket expenses incurred totalling $135,124.02, representing 860.05 hours of attorney and paralegal time expended and to be expended for a total of $163,824.02 allocable to services, plus the sum of $13,824.02 for out-of-pocket costs, less the aggregate sum of $28,700.00, representing costs and fee retainers previously received. Neiwirth also disclosed to the bankruptcy court a post-petition fee sharing agreement with LSMC whereby, subject to the approval of the court, Neiwirth would be entitled to a share to the extent of ⅓ in any compensation to be awarded to LSMC in the bankruptcy proceeding.

LSMC sought final compensation totalling $285,330.00, representing 25% of the net cash collected ($1,074,000.00) from the settlement with DKC and DUS after satisfaction of Heller's secured claim ($268,500.00), plus payment of $16,830.00 in additional compensation for 84.15 recorded hours at $200.00 per hour. This fee request was in accordance with the pre-petition fee agreement between LSMC and the debtors, except that LSMC now requested 25% of the *net* cash collected rather than 25% of the *gross* amount.

On April 28, 1986, the bankruptcy court issued its order notifying all parties in interest of the deadline for filing attorneys' fees applications and that the allowance of

---

**6.** Title 11, U.S.C. § 330 provides in pertinent part as follows:

**Compensation of Officers**

(a) After notice to any parties in interest and to the United States trustee and a hearing, and subject to sections 326, 328, and 329 of this title, the court may award to a trustee, to an examiner, to a professional person employed under section 327 or 1103 of this title, or to the debtor's attorney—

(1) reasonable compensation for actual, necessary services rendered by such trustee, examiner, professional person, or attorney, as the case may be, and by any paraprofessional persons employed by such trustee, professional person, or attorney, as the case may be, based on the time, the nature, the extent, and the value of such services and the cost of comparable services other than in a case under this title; and

(2) reimbursement for actual, necessary expenses.

**7.** Title 11, U.S.C. § 328 provides in pertinent part as follows:

**Limitation on compensation of professional persons**

(a) The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments unanticipatable at the time of the fixing of such terms and conditions.

such compensation would be considered by the court at the scheduled hearing on the confirmation of the debtors' plan of reorganization. On June 6, 1986, Neiwirth and LSMC filed their joint motion for allowance of final compensation. On August 7, 1986, the bankruptcy court considered the joint motion for allowance of final compensation at the Chapter 11 confirmation hearing. The confirmation hearing was attended by Neiwirth, LSMC, and David M. Levine, Esq., of the law firm of Finley, Kumble, Wagner, Heine, Underberg, Manley & Casey (hereinafter "Finley, Kumble"), attorneys for the creditors committee in the debtors' bankruptcy case. Also in attendance throughout the confirmation hearing was Omer T. Basar, the principal and controlling shareholder of DMO.[8]

At the hearing, Neiwirth discussed the settlement achieved and other matters. Neiwirth indicated that the settlement resulted from a trip Basar had taken to Tokyo, Japan. The question of attorneys' fees was also discussed.[9] At one point in the hearing, the bankruptcy court asked Mr. Levine what he thought about Neiwirth's and LSMC's fee applications. Levine commented that they were "a little high, but we think the results obtained by the debtors' counsel in this case were very beneficial." Later the court asked Levine whether he felt the fees were a little high. Levine responded that "our only comment would be that if you looked at the hourly rate, based upon the contingent fee, it comes out to something like $3,300.00 an

hour.... Now, on the other hand ... the results were very, very good, and there seems to be enough to pay unsecureds with interest."[10] At the conclusion of the attorneys' fee discussion, the bankruptcy court invited everyone in attendance at the hearing to comment on either Neiwirth's or LSMC's attorneys' fee applications; no comments were made.[11]

On August 28, 1986, the bankruptcy court entered detailed findings of fact and a final order allowing final compensation to Neiwirth and LSMC. LSMC was awarded the sum of $283,500.00 as final compensation for services rendered to the debtors as special litigation counsel. Subsequently, DMO appealed to the district court the bankruptcy court's order allowing final compensation to LSMC. A motion to dismiss the appeal filed by LSMC in the district court was granted by the district court on October 22, 1987. It is from this order that DMO takes this appeal.

## II. ISSUE

The issue presented to this court on appeal is whether the district court erred in dismissing DMO's appeal from the bankruptcy court's award of attorneys' fees to LSMC as special litigation counsel.

## III. DISCUSSION

In *Matter of Novack*, 639 F.2d 1274 (5th

---

**8.** Basar's presence at the hearing is confirmed by the affidavit of David M. Levine, Esq. *See also* Appellant's Response to Appellee's Motion to Dismiss Appeal in the District Court, p. 5 (Basar failed to object by reason of a "conspiracy of silence," *not*, evidently, because he was absent from the hearing). This negates DMO's contention that "It is undisputed that [the] hearing was conducted outside of the presence of the debtor/appellant." Reply Brief of Appellant, p. 7.

**9.** A transcript made of the hearing demonstrates that the Finley, Kumble law firm, which represented the creditors committee, had previously obtained interim compensation of $27,200.00 and were asking for an additional $8,873.22, including costs.

**10.** The bankruptcy court recognized in its analysis of the motion for final compensation filed by

Neiwirth and LSMC that allowances to these firms would be required to be paid prior to the claims of the unsecured creditors under the DMO plan, since such allowances are first priority administrative expense claims under 11 U.S.C. § 507(a)(1). This also applies to payments to be reserved for counsel as well as to the creditors committee.

**11.** The transcript of the confirmation hearing demonstrates the following:

> THE COURT: Anybody here who has listened attentatively to the fee applications, anybody have any thoughts on them?
> [No response.]
> All right. I will look them over and set them. Transcript of Chapter 11 Confirmation Hearing, p. 10.

Cir.1981),[12] the court determined that a factual finding of a bankruptcy court must be accepted on appeal unless found to be clearly erroneous. *See also In re Bardwell,* 610 F.2d 228, 230 (5th Cir.1980). Specifically, the *Novack* court held: "[A]pplication of the clearly erroneous doctrine becomes paramount when, as here, the district court has approved the referee's determination." *Id.* at 1278.

The evidence in the record before us clearly demonstrates that the district court's finding that DMO failed to object to LSMC's application for compensation is not clearly erroneous. Indeed, the record indicates that DMO, through Neiwirth and its principal, Basar, had notice of the hearing on LSMC's request for attorneys' fees and had notice of the fact that LSMC was requesting an amount of fees consistent with its contingency fee agreement with DMO. Moreover, Neiwirth and Basar attended the hearing where LSMC's request for attorneys' fees was heard by the bankruptcy court. All present were invited by the bankruptcy court to comment on the request for compensation submitted by LSMC and no objection, constructive or otherwise, was made.[13] We are thus persuaded that the district court's finding that DMO failed to voice its objection to LSMC's

application for compensation in the bankruptcy court was not clearly erroneous.[14]

We also find that the district court correctly concluded that DMO's objections to LSMC's attorneys' fees did not present exceptional circumstances precluding application of the rule that an issue cannot be raised for the first time on appeal. Appellate courts will generally decline to consider an issue raised for the first time on appeal. *Troxler v. Owens–Illinois, Inc.,* 717 F.2d 530, 533 (11th Cir.1983); *Matter of Novack,* 639 F.2d at 1276. If a party has an objection, the party must make the objection. Failure to interpose an objection in a timely manner means the party forgoes raising the issue.

In *Novack,* which is not dissimilar to the present case, the bankruptcy court issued an order approving settlement after the parties had an opportunity to be heard. The appellants raised no objections to the settlement agreement. Thereafter, the appellants appealed the bankruptcy court's order. The district court granted the appellee's motion to dismiss the appeal, and the Fifth Circuit affirmed. In its opinion, the court held:

> The district court's dismissal order concluded that appellants had been afforded

---

**12.** The Eleventh Circuit, in *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

**13.** We disagree with DMO that the response of Mr. Levine, the creditors committee's counsel, to a question of the bankruptcy court constituted an objection to the fee. Specifically, the following colloquy took place:

> THE COURT: Mr. Creditors Committee, what are your thoughts on the fee applications?
> MR. LEVINE: Your Honor, we have reviewed them. There does appear to be enough funding for a 100 percent plan.
> You know, we think the amount is a little high, but we think the results obtained by the Debtor's counsel in this case were very beneficial.
> THE COURT: He did a pretty good job on this case.
> MR. LEVINE: Yes, sir, he did.

Transcript of Chapter 11 Confirmation Hearing, pp. 7–8.

**14.** Although DMO argued in the district court that a *constructive* objection had been made,

this argument was abandoned on appeal to this court. According to DMO, when it failed to reach an agreement on representation with LSMC, it constructively objected to LSMC's later request for fees. We are unpersuaded by this argument. First, there is no precedent for constructive objections. Rule 46 of the *Federal Rules of Civil Procedure* is very clear that in order to object to a ruling or order, the party must make an objection. Rule 46 states in pertinent part as follows:

> Formal exceptions to rulings or orders of the court are unnecessary; but for all purposes for which an exception has heretofore been necessary *it is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which the party desires the court to take or the party's objection to the action of the court and the grounds therefor.* (Emphasis added.)

Nor do "constructive objections" fall within any of the five exceptions to the general rule pronounced by this court in *Dean Witter Reynolds, Inc. v. Fernandez,* 741 F.2d 355 (11th Cir. 1984). There is simply no support for the notion that a party may constructively object to a court's order.

adequate opportunity to object to the terms of the settlement. Consequently, their appeal was discovered to be representative of nothing more than a blatant attempt to question the settlement's fairness for the first time before a reviewing tribunal.... Consequently, the sole inquiry of this court must be whether the district court properly found that the bankrupts were raising an issue for the first time on appeal.

*Id.* at 1277.

In *Dean Witter Reynolds, Inc. v. Fernandez,* 741 F.2d 355 (11th Cir.1984), this court identified five exceptions to the general rule that an appellate court will refuse to consider an issue not presented to the trial court and raised for the first time on appeal.

■   First, an appellate court may consider a pure question of law if the refusal to consider it would result in a miscarriage of justice. *See also Matter of Novack,* 639 F.2d at 1277. Here, the question was whether the bankruptcy court abused its discretion in ordering the attorneys' fees it did. That issue involves the reasonableness of those fees, and as such includes questions of fact as well as of law.

■   Second, an appellate court may consider an objection not raised in the court below when the appellant had no opportunity to raise the objection. In the present case, DMO had an opportunity to object to the attorneys' fees at the confirmation hearing, and in fact was invited to do so by the bankruptcy judge.

■   Third, an appellate court may consider an objection not raised below when there is at stake "a substantial interest of justice." DMO points to various alleged improprieties and injustices throughout the bankruptcy proceedings as evidence of the questions of substantial justice raised here. However, the "interests of substantial justice" are generally equated with the vindication of fundamental constitutional rights, rather than the correction of alleged wrongdoing along the lines of fee-splitting and over compensation of attorneys. *See,*

*e.g., U.S. v. Fernon,* 640 F.2d 609, 612 n. 8 (5th Cir.1981) (appellants' right to a fair trial at stake); *Edwards v. Sears, Roebuck & Co.,* 512 F.2d 276, 286 (5th Cir.1975) (with regard to the appellants' right to a fair trial, the court stated, "[A] healthy regard for the necessity and desirability of having errors corrected at trial rather than on appeal leads us to [consider arguments not raised below] only in *exceptional* cases where the interest of substantial justice is at stake." (emphasis added)). *See also Response of Carolina, Inc. v. Leasco Response, Inc.,* 537 F.2d 1307, 1324 (5th Cir. 1976) (the court refused to consider an issue for the first time on appeal where appellants had ample time to determine the need for their objection).

■   Fourth, an appellate court may hear an issue not raised in the lower court when the proper resolution is beyond any doubt. Where, as here, an issue raised for the first time on appeal requires an appellate tribunal to resolve factual questions, the proper resolution of such issue cannot be said to be beyond any doubt.

■   Finally, an appellate court may hear an issue for the first time if the issue presents significant questions of general impact or great public concern. We agree with the district court that no issue of transcending public importance, such as was found in *Dean Witter Reynolds* (which addressed the national policy of denying Cuban nationals access to American dollars to finance acts of aggression or subversion abroad), is raised here.

We, therefore, agree with the district court's determination that DMO's appeal does not raise issues identified in the *Dean Witter Reynolds,* decision as being excepted from the general rule.

DMO makes a cogent argument that bankruptcy courts have an affirmative duty to prevent a "conspiracy of silence" among bankruptcy attorneys.[15] DMO contends that creditors and owners of debtors are not in a position to object to attorneys' fees. While we share DMO's concerns in

---

**15.** *See In re Underground Utilities Construction*   *Co.,* 13 B.R. 735, 736 (Bankr.S.D.Fla.1981).

this area, we do not believe that this court should extend the holding in the *Dean Witter Reynolds,* case to create a sixth exception for objections to attorneys' fee applications in bankruptcy cases. That would be contrary to the policy goals sought to be advanced by this court in its *Dean Witter Reynolds,* decision.

 Further, DMO does not allege, and indeed there is nothing in the record to suggest, that the bankruptcy court did not review the attorneys' fees application. The determination of attorneys' fees in a bankruptcy proceeding is normally left to the sound discretion of the bankruptcy judge unless the bankruptcy judge abuses his discretion. *In re U.S. Golf Corp.,* 639 F.2d 1197, 1201 (5th Cir.1981). To determine on the merits if the bankruptcy judge abused his discretion in approving fees which, when broken down, amounted to approximately $3,300.00 an hour for LSMC, the district court considered the 12 factors announced by the Fifth Circuit in *In re First Colonial Corp.,* 544 F.2d 1291, 1298–99 (5th Cir.), *cert. denied,* 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977) (*citing Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974)). A review of the bankruptcy court's extensive memorandum accompanying its order awarding attorneys' fees demonstrates that the bankruptcy court carefully examined the facts of this case and both rigorously and diligently applied the 12 factors to them. Further, we concur in the district court's finding that DMO had ample opportunity to object.[16]

The course now urged upon us by DMO would delay the disposition of bankruptcy cases and result in the *de novo* review of bankruptcy fee applications by the district court. A party objecting to a fee could say nothing to the bankruptcy court, await its ruling, bypass that judgment, and for the first time take that objection to the district court. We decline to follow that course. Accordingly, we affirm the district court's

dismissal of DMO's appeal from the bankruptcy court's award of attorneys' fees.

AFFIRMED.

---

16. Parties have "some duty to move affirmatively to identify alleged factors of unfairness … at the fact-finding level, not the appellate level." *In re Blair,* 538 F.2d 849, 851 (9th Cir.1976).