UNITED STATES of America, Plaintiff-Appellee,

v.

Alf HILL, Jr., Defendant-Appellant.

No. 74–1339.

United States Court of Appeals, Tenth Circuit.

Argued Aug. 19, 1975.

Decided Dec. 15, 1975.

Certiorari Denied April 19, 1976. See 96 S.Ct. 1676.

---

Leonard D. Munker, Federal Public Defender, Wichita, Kan., for defendant-appellant.

Bruce E. Miller, Asst. U. S. Atty., Topeka, Kan. (E. Edward Johnson, U. S. Atty., Topeka, Kan., on the brief), for plaintiff-appellee.

Before HILL, SETH and McWILLIAMS, Circuit Judges.

HILL, Circuit Judge.

This appeal follows appellant's conviction for one count of violating 18 U.S.C. § 111[1] and one count of violating 18 U.S.C. § 1792.[2] Only a very brief factual statement is required.

On October 11, 1973, appellant, an inmate in the United States Penitentiary at Leavenworth, Kansas, was taken from his second floor cell to attend a good time forfeiture hearing on the first floor of the maximum security building. After a brief time in the hearing room, appellant came out and eventually started walking toward a restricted area. Two prison officers commanded him not to go there; appellant proceeded, and one officer took appellant by the arm and pulled him back. Appellant started swinging at the officers, and a brawl followed. During the struggle appellant screamed such things as the following: "20 to 30 of the . . . pigs kicking me in my testicles and my head," "They broke my nose," "[T]here is 20 or 30 of these people just beating me up," "They broke my arm," and "They broke my leg." Officers testified that in response to these yelled statements inmates who were in their cells broke glass and wooden doors, yelled, and started fires.

A two-count indictment was returned against appellant on November 14, 1973. Trial commenced on March 4, 1974; a verdict of guilty on both counts was returned by the jury.

Appellant initially contends the trial court erred in denying his counsel's request for a continuance. The motion for continuance was filed three days before the trial setting. In the affidavit supporting that motion, appellant's counsel alleged, *inter alia,* the investigation of the facts was far from complete due to restrictions placed on the court-appointed investigator and law student investigators by penitentiary personnel and hindrances placed upon appellant's representative in reviewing government files. A supplemental affidavit, filed by two of appellant's three counsel, explained that on February 28, 1974, appellant had advised them he did not want to retain his counsel; in another case involving appellant, a judge had granted leave for counsel to withdraw. On appeal, appellant mentions the lack of rapport between his out-of-district counsel and the court, the notoriety of the case, the numerous requests of appellant, and the court's limited knowledge of the facts as indicating an abuse of discretion in denying the continuance.

■ Consideration of these contentions is based on the well-established rule that "[t]he trial court is vested with discre-

---

1. 18 U.S.C. § 111 provides in pertinent part: "Whoever forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of his official duties, shall be fined not more than $5,000 or imprisoned not more than three years, or both."

2. 18 U.S.C. § 1792 provides in pertinent part: "Whoever instigates, connives, willfully attempts to cause, assists, or conspires to cause any mutiny or riot, at any Federal penal or correctional institution . . .

"Shall be imprisoned not more than ten years."

tion as to granting a continuance. Its exercise will not be disturbed on appeal in the absence of a clear showing of abuse resulting in manifest injustice." *United States v. Spoonhunter,* 476 F.2d 1050 (10th Cir. 1973). Our review of the record convinces us no abuse of discretion occurred in denying this motion for continuance. One attorney had entered his appearance on November 27, 1973, two other attorneys had entered their appearances on January 24, 1974. Services of a court-appointed investigator were utilized. No showing of inadequate time to investigate and prepare for trial is made. *See United States v. Harris,* 441 F.2d 1333 (10th Cir. 1971). The record does not show any injustice resulting from the denial of this continuance request.

Another error alleged is the trial court's denial of the motion[s] of appellant's counsel for an independent psychiatric examination of appellant under 18 U.S.C. § 4244. On February 27, 1974, appellant's counsel, in a telephone conversation with the trial judge, first raised the issue of appellant's lack of competency to stand trial. The trial judge directed a mental examination of appellant pursuant to § 4244. The examination was conducted by Dr. Karl K. Targownik. Regrettably, the examination was not thorough, as appellant points out. Appellant indicated to Dr. Targownik that he desired to discuss the matter with his counsel before submitting to the examination, and Dr. Targownik acceded to appellant's desire. Thus, the examination was terminated following a very brief exchange. On the first day of trial, appellant's counsel filed a motion for an independent psychiatric examination. That motion indicated it formalized the concern expressed previously and discussions had at a pre-trial hearing. Allegations in an affidavit supporting that motion included the following: appellant could not grasp concepts as fast as when counsel first met him, appellant frequently went into tangential subjects, appellant was very suspicious of prison employees, and appellant was unable to concentrate on subjects vital to his defense.

This motion was considered prior to the start of the jury selection. Dr. Targownik testified concerning the examination. From his written report, he read:

Since the undersigned did not complete a full psychiatric examination, therefore he cannot form a medical diagnostic opinion, but can express a clinical impression of high degree of medical scientific certainty that this man is competent to stand trial.

In denying the motion, the trial judge pointed to the omnibus hearing report which indicated no claim of any mental incompetency of appellant to stand trial would be made. The judge mentioned the telephone call where appellant's counsel implied that if the court did not grant a continuance the issue of competency to stand trial might be raised (an interpretation of the call challenged by appellant's trial counsel). The court further recognized efforts of appellant to avoid going to trial. The court found:

. . . the suggestions made by the defendant's counsel that the defendant might not be competent to stand trial was [sic] not made in good faith, but amounts [sic] simply to a ruse to obtain a continuance . . . . There does not now appear to be anything on which to form a credible basis justifying the need of a mental examination of this defendant . . . . [T]he Court does find that he is mentally competent to stand trial, and he is able to understand the proceedings against him and to properly assist his counsel in his defense.

Appellant's counsel then orally moved for an examination by an independent psychiatrist. In response to that further motion, the court stated:

. . . the Court out of an abundance of precaution directed this be done as a result of the statement, which the Court now finds wasn't made in good faith, and really would have required no examination

. . . . This is nothing but another ruse of the defendant to try to keep from going to trial.

Appellant cites *United States v. Burgin,* 440 F.2d 1092 (4th Cir. 1971), where the court said, "A district court is required to grant a § 4244 motion for a mental examination unless the motion is not made in good faith or the grounds for the motion are frivolous." *See also Rose v. United States,* 513 F.2d 1251 (8th Cir. 1975); *Meador v. United States,* 332 F.2d 935 (9th Cir. 1964). Appellant contends the court erred in failing to grant the motion, relying on the mandatory nature of the statute. The government answers that *Burgin* authorizes the trial court's action. The government points to the trial judge's explicit findings that the motion[s] was [were] not made in good faith and contends the normally mandatory examination was properly denied.

We agree with the government. The Fifth Circuit in an analysis of § 4244 made the following statement:

Unquestionably there is an allowable range of discretion in the district judge in granting or denying a motion for a § 4244 examination [citations omitted]. But it is easy to misconceive the level of inquiry at which discretion is operative. As we have pointed out, the statute is mandatory in requiring an examination once the underlying criteria trigger its operation. The trial judge's discretion operates at two levels; that of determining whether there is an undergirding factual basis for "reasonable cause to believe," and whether the facts which the court accepts as existent are wholly insufficient to give rise to the alleged "reasonable cause to believe." Interwoven through both levels is the principle, as usually articulated, that the court may reject a motion which it considers to be frivolous or filed not in good faith. Once the two levels of analysis are passed, discretion drops out and the mandate of the statute takes over.

*United States v. McEachern,* 465 F.2d 833 (5th Cir.), *cert. denied,* 409 U.S. 1043, 93 S.Ct. 539, 34 L.Ed.2d 494 (1972).

■ The trial judge was acting within his range of discretion when he denied the motions for psychiatric examination on the ground of lack of good faith in making the motions. To some extent the merits of the matter of incompetency became entangled in this determination, but the trial judge clearly determined these motions were ruses to obtain a continuance. Appellant has not attacked this finding. The trial court, on this record, did not err in denying the motions for an independent psychiatric examination of appellant.

Appellant contends the court erred in overruling requests that appellant be allowed to appear in propria persona and also to be represented by counsel. Appellant points to another morning-of-trial motion in which his counsel moved to allow appellant "to assist at trial in his own defense." In suggestions filed in support of this motion, counsel said:

It is essential that defendant be represented by attorneys trained in the law at his trial. . . .

It is also essential, however, that defendant be allowed to assist in his own defense. Only a prisoner, who is peculiarly familiar with the conditions, practices, and procedures in a prison, can fully apprehend and respond to testimony of prisoners and prison guards.

This motion was denied. Prior to a noon recess, appellant addressed the court concerning the absence of black persons on the jury. As appellant's brief says, "The statements of the defendant deteriorated to the point that the defendant was finally physically removed from the courtroom by Deputy United States Marshals." Following the noon recess, at a hearing out of the jury's presence, appellant addressed the court and indicated he desired to ask questions

of jurors and witnesses to a certain extent. The court denied this request.[3]

Appellant argues 28 U.S.C. § 1654[4] gives a defendant the right to represent himself and appear in propria persona. Since briefing, appellant claims his position has also found support in the Sixth Amendment as the Supreme Court interpreted that amendment in *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). The Supreme Court said in *Faretta*, "Although not stated in the Amendment in so many words, the right to self-representation—to make one's own defense personally—is thus necessarily implied by the structure of the Amendment." Appellant is asserting a right to represent himself, which, he claims, was denied because of his behavior. Appellant also contends the request was not one for hybrid representation, partly by himself and partly by his attorneys. Appellant says the court should have inquired to determine the exact nature of appellant's request.

The record convinces us the request was for hybrid representation. The written motion clearly proposed hybrid representation, and most of appellant's remarks are consistent with a hybrid representation request.

Prior to *Faretta*, courts had stated that a party had a right to represent himself or to be represented by counsel but did not have a right to hybrid representation. *Lee v. Alabama*, 406 F.2d 466 (5th Cir. 1968), *cert. denied*, 395 U.S. 927, 89 S.Ct. 1787, 23 L.Ed.2d 246 (1969); *Brasier v. Jeary*, 256 F.2d 474 (8th Cir.), *cert. denied*, 358 U.S. 867, 79 S.Ct. 97, 3 L.Ed.2d 99 (1958) (a civil case); *Duke v. United States*, 255 F.2d 721 (9th Cir.), *cert. denied*, 357 U.S. 920, 78 S.Ct. 1361, 2 L.Ed.2d 1365 (1958). *See also United States v. Dellinger*, 472 F.2d 340 (7th Cir. 1972), *cert. denied*, 410 U.S. 970, 93 S.Ct. 1443, 35 L.Ed.2d 706 (1973); *United States v. Conder*, 423 F.2d 904 (6th Cir.), *cert. denied*, 400 U.S. 958, 91 S.Ct. 357, 27 L.Ed.2d 267 (1970); *Shelton v. United States*, 205 F.2d 806 (5th Cir.), *appeal dismissed*, 346 U.S. 892, 74 S.Ct. 230, 98 L.Ed. 395 (1953). Since *Faretta*, at least one district court has determined that a criminal defendant already represented by counsel has no right to act as her own co-counsel. *United States v. Swinton*, 400 F.Supp. 805 (S.D.N.Y.1975). These decisions do not foreclose a trial judge from allowing hybrid representation in appropriate cases; rather, they indicate no right to hybrid representation exists. *Brasier v. Jeary*, supra; *United States v. Swinton*, supra. Furthermore, we see no reason to distinguish between this case where retained counsel is involved in the request for hybrid representation and cases where appointed counsel is involved in such requests. *See Duke v. United States, supra.*

We believe *Faretta* does not alter the established rules concerning hybrid representation. As noted in *Swinton*,

> . . . Faretta ratified a consensus within the federal judiciary favoring a constitutional right to *pro se* status; that consensus has existed side by side with another finding that a defendant's appearance as co-counsel lies within the discretion of the trial court.

---

**3.** The oral request was presented in the following manner:

THE DEFENDANT: "Well, at this point, I would like to ask if—again if I could be allowed to assist in my defense."

THE COURT: "You mean ask questions of jurors and ask questions of witnesses?"

THE DEFENDANT: "To a certain extent, yes."

THE COURT: "No. The Court is not going to grant you that request. I have already ruled on it."

THE DEFENDANT: "No. No, I didn't say that I wanted to dismiss them [his attorneys]. I said that I wanted to represent myself and I want to have my attorneys assist me."

**4.** 28 U.S.C. § 1654 provides: "In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein."

The Sixth Amendment does not give any indication that hybrid representation is a right of constitutional dimensions. Title 28 U.S.C. § 1654 is written in the disjunctive— "parties may . . . conduct their own cases personally *or* by counsel . . .." Thus no statutory right of hybrid representation is accorded. Finally, although not raised by appellant, we cannot say the trial court abused its discretion in denying hybrid representation in this case. The trial court did not err in denying appellant's request(s) for hybrid representation.

By another motion, appellant sought permission for his counsel to conduct the voir dire; if this request were denied, appellant wanted the court to ask some specific questions of the prospective jurors. Appellant argues the trial court erred in denying his counsel the opportunity to voir dire, overruling this Rule 24(a), F.R.Crim.P., motion and refusing to give some of the requested questions. Appellant asserts the denial of voir dire by counsel prevented him and his counsel from determining whether the prospective jurors were free from prejudice or bias.

■ Rule 24(a) allows the court itself to conduct the voir dire provided the defendant or his attorney and the government's attorney are permitted to supplement the examination by further proper inquiry or are allowed to submit additional questions which the court itself shall submit to the jurors as the court deems proper. "The court's discretion under this rule will not be disturbed, unless it appears from the record that its voir dire was inadequate to properly test the qualifications and competency of the prospective jurors to sit on trial of the case." *Brundage v. United States,* 365 F.2d 616 (10th Cir. 1966). The trial judge propounded many questions to the prospective jurors. Our review of the record convinces us the voir dire was adequate to test the qualifications and competency of the jurors. Appellant has not pointed to any specific inquiry which should have been made but was omitted; we find no prejudice to appellant in the

manner and the extent of voir dire. *United States v. Addington,* 471 F.2d 560 (10th Cir. 1973).

Appellant argues the trial court indicated to the jury the accused was guilty and therefore deprived appellant of a fair trial or the presumption of innocence. As mentioned earlier, the appellant erupted into a long harangue just prior to a noon recess. Much of the tirade included personal attacks on the court. After repeatedly asking the appellant if he were finished, the court had the appellant removed from the courtroom by the marshals present. The court immediately instructed the jury they should not permit themselves to be influenced by this outburst. The court said in part, "This is not evidence. Ignore what he has said. He is highly emotional this morning. . . . It is not proper and you will not allow yourselves to be influenced by his conduct or by what he says." Following the recess, appellant's counsel moved for a mistrial on two grounds: the action taken against appellant was unjustified and calculated to provoke prejudice in the jury's eyes, and the court was observed laughing and smiling during appellant's statement. The judge admitted smiling and said he had had difficulty in restraining himself because of the appellant's outrageous conduct.

■ Appellant was entitled to a fair trial but not a perfect one. *Lutwak v. United States,* 344 U.S. 604, 619, 73 S.Ct. 481, 97 L.Ed. 953 (1953). The trial judge's conduct—smiling or smirking—does not approach the conduct condemned in *United States v. Nazzaro,* 472 F.2d 302 (2d Cir. 1973). This conduct did not indicate the court believed the accused to be guilty. We do not believe the appellant's removal from the courtroom prevented him from receiving a fair and impartial trial. Appellant's own conduct provoked his removal and the trial judge immediately instructed the jury to disregard the conduct.

■ Appellant argues the court erred in refusing to allow his counsel to use an

F.B.I. 302 statement as a document for impeachment purposes. The trial court did not, however, prohibit appellant's counsel from asking witnesses if they made certain statements to the F.B.I.; the court had indicated he would not allow counsel to use the 302 statement to impeach a witness because the witness did not prepare or sign the document and probably never adopted it. Thus, counsel was allowed to question based upon the information in the 302 statement. In questioning the first witness, counsel asked a question which was objected to on the ground of improper form. That objection was sustained (apparently twice), and appellant's counsel ceased in his attempt to bring out the prior inconsistent statement. No error is alleged concerning the ruling on the form of the question. Appellant's counsel successfully used a prior inconsistent statement derived from a 302 in cross-examining a subsequent witness. Our

review convinces us there was no error as asserted by appellant in this regard.[5]

 Appellant takes exception to a question asked by the government. The appellant was asked on cross-examination if he had ever struck out at a United States marshal. Appellant's counsel immediately objected. The court sustained the objection, but appellant answered, "I have never." We can fathom no basis for the question consistent with good evidentiary principles. *See United States v. Parker,* 469 F.2d 884 (10th Cir. 1972); Fed.Rules Evid., Rule 404. However, we find the presentation of this matter to be harmless error. F.R. Crim.P. Rule 52(a). The court sustained an immediate objection and appellant answered the question in the negative.

 Appellant finally attacks the indictment and points out the two counts fail to allege the acts were done knowingly, willfully and with specific intent.

---

5. For clarity, we set out the parts of the record pertinent to this discussion.

*Cross-examination of Randy Lynn Meier*

MR. MILLER (for the government) (at the bench): "I would object to using the F.B.I. 302 interview. . . . This man knows perfectly well that is not a signed statement. . . . Now what the agent wrote down this man may presumably have no knowledge about it, be it incorrect or anything else."

MR. ELDREDGE (for appellant): "That is not an accurate statement of the law. Impeachment by prior inconsistent statements, a signed statement is certainly not required."

THE COURT: ". . . You can't use that to impeach him. You may ask him if he made such and such a statement to the F.B.I. I mean I will let you do that. I am not going to let you impeach him with an unsigned statement that he didn't prepare, didn't sign, probably never adopted."

MR. ELDREDGE (in the hearing of the jury): "Mr. Meier, it is a fact, isn't it, that whenever you were interviewed by an F.B.I. agent in connection with this case, you made the following statement, 'He then started yelling—' "

MR. MEYER (for the government): "We object to the form of the question."

THE COURT: "No. No, you may ask him if he made such a statement."

MR. ELDREDGE: "Did you make this statement to an F.B.I. agent, ' . . . there are 20 of them out here and they are beating me up and have broken my nose,' saying nothing whatsoever about breaking an arm or leg?"

MR. MILLER: "Object to the form of the question."

THE COURT: "Sustained. It is argumentative."

MR. ELDREDGE: "Did you make that statement?"

THE COURT: "Sustained."

MR. ELDREDGE: "Nothing further."

*Cross-examination of Robert A. Merideth*

MR. ELDREDGE: "Now, did you make the statement to an F.B.I. statement (sic) that 'Inmate Hill grabbed—' that 'Officer Hulett—' "

MR. MILLER: "Objection to the form of the question."

THE COURT: 'No, he may ask this. Did you tell the F.B.I. agent the statement he wants you to—"

MR. ELDREDGE: "Did you tell an F.B.I. agent that, 'Inmate Hill grabbed Officer Hulett?' "

MR. MERIDETH: "I don't know if I used those words."

THE COURT: "Now wait until he asks the question before you answer it."

MR. ELDREDGE: "Did you make that statement?"

MR. MERIDETH: "I don't know, I guess as far as I know I did."

No authority is cited which indicates these allegations are essential to sufficient indictments under 18 U.S.C. § 111 or 18 U.S.C. § 1792. Appellant notes that § 1792 contains the word *willfully* and the count of the indictment for that offense does not. Section 1792 contains a list of several different types of prohibited conduct; there is no allegation appellant attempted to cause mutiny (modified by *willfully* in the statute). The indictment alleges that he "did instigate and cause mutiny." Consequently, the portion of § 1792 containing the word *willfully* was not relied on here. "Ordinarily it is sufficient if the indictment or information follows the language of the statute creating the offense." 8 Moore's Federal Practice ¶ 7.04 (2d ed. 1975). "The elements need not be alleged in terms, and a pleading is good if it fairly imports knowledge, intent, or malice where these are elements of the crime." 1 Wright, Federal Practice & Procedure § 125 at 243–44 (1969). We believe that the words of these two statutes, as used in the indictment, fairly import the elements of knowledge and willfulness. *See United States v. Martell*, 335 F.2d 764 (4th Cir. 1964). The trial judge instructed the jury that both these elements were required for conviction under both counts. Specific intent was not an element of either crime.[6] We hold this indictment conformed to F.R.Crim.P. 7(c); it contained the elements of the offenses and sufficiently apprised the appellant of the charges so that he would not be misled in preparing a defense. *See Velasquez v. United States*, 244 F.2d 416 (10th Cir. 1957). Although all other possible participants were locked in their cells, appellant was able to instigate and cause mutiny.

Affirmed.

---

**6.** In *Pino v. United States*, 125 U.S.App.D.C. 225, 370 F.2d 247 (1966), *cert. denied*, 387 U.S. 922, 87 S.Ct. 2038, 18 L.Ed.2d 977 (1967), the court noted that ". . . assault is a so-called 'general intent' crime . . . and . . . . no particularized reference to intent is required." In *United States v. Feola*, 420 U.S. 671, 95 S.Ct. 1255, 43 L.Ed.2d 541 (1975), the Supreme Court determined that ". . . § 111 cannot be construed as embodying an unexpressed requirement that an assailant be aware that his victim is a federal officer."