**In re John S. TRINSEY, Jr., Debtor.**

**Bankruptcy No. 88–10694S.**

United States Bankruptcy Court,
E.D. Pennsylvania.

June 28, 1990.

Leonard Goldberger, Philadelphia, Pa., for Nassau Sav. and Loan Ass'n.

Edward J. DiDonato, Paul J. Winterhalter, Philadelphia, Pa., for Mitchell W. Miller, trustee for Gulph Woods.

**830**

Rania M. Major, Philadelphia, Pa., for debtor.

Stephen Raslavich, Philadelphia, Pa., for Maurice Baehr, Trustee.

Lawrence T. Phelan, Philadelphia, Pa., for David Mermelstein.

George B. Ditter, Ambler, Pa., for Gulph Woods.

### MEMORANDUM

DAVID A. SCHOLL, Bankruptcy Judge.

### A. INTRODUCTION

Before us is an Application of Rania M. Major ("Major"), requesting that she be appointed, under certain conditions, as "co-counsel" with the Debtor, JOHN S. TRINSEY, JR. ("the Debtor"), who has been proceeding *pro se* in his bankruptcy case, converted from Chapter 11 to Chapter 7 on August 17, 1989. Specifically, she requests that her rate of compensation be established at $150 per hour and that she receive, presumably immediately, a $25,000 retainer for legal fees and a $10,000 retainer for costs and fees from sums on deposit in the bankruptcy case of the GULPH WOODS CORPORATION ("Gulph Woods"), Bankruptcy No. 87–03093S, a corporation of which the Debtor is a principal and the sole shareholder and which was also a debtor in a Chapter 11 case converted to Chapter 7 on August 17, 1989. In light of the need to resolve the issue of Major's range of participation in these cases prior to further proceedings in them, including the trial of an important adversary proceeding in the Gulph Woods bankruptcy case, Adv. No. 89–1016, which will determine much of the distribution of the assets of Gulph Woods, we will address this issue at some length herein in order to provide Major and the Debtor with guidance.

■ Initially, we note that, as a general principle, counsel for a Chapter 7 debtor need not be appointed as such by the bankruptcy court to receive compensation from that debtor's estate, but can obtain compensation from that estate only upon establishing, in a subsequent application, that counsel's services benefitted the estate. However, we cannot allow Major to serve as co-counsel with the Debtor *pro se* under any circumstances, nor can we allow her to receive compensation from the Gulph Woods estate for services performed on behalf of the Debtor, nor will we pre-establish her rate of compensation at $150.00 per hour. We will therefore allow Major to appear on behalf of the Debtor in his own case and the Gulph Woods case only if she enters an appearance for him in these cases and acts as sole counsel for the Debtor therein. If she does enter her appearance, she will be compensated only if she files a subsequent application establishing her performance of services which benefitted the Debtor's estate.

### B. PROCEDURAL AND FACTUAL BACKGROUND

The history of the Gulph Woods case through April 11, 1988, can be gleaned from our Opinion of that date published at 84 B.R. 961, *aff'd*, C.A. No. 88–4081 (E.D.Pa. Feb. 24, 1989). The history of the Debtor's own case appears in a to-be-published Opinion of April 27, 1990, in Adversary No. 89–1171S, 114 B.R. 86, in which we held that the Debtor would be denied a discharge on the basis of 11 U.S.C. §§ 727(a)(3), (a)(4)(D), and (a)(5) (cited hereafter as *"Trinsey I"*).

To summarize the pertinent aspects of this history, we note that the Debtor filed a Chapter 11 petition on March 2, 1988, subsequent to Gulph Woods' Chapter 11 filing on June 13, 1987. Upon conversion of both cases to Chapter 7 on August 17, 1989, Maurice W. Baehr ("Baehr") and Mitchell Miller, Esquire ("Miller"), were appointed as Trustees in the respective bankruptcy cases of the Debtor and of Gulph Woods.

On July 6, 1988, we entered an Order authorizing the Debtor to employ Edward Cohen, Esquire ("Cohen"), as his attorney in his case, then a Chapter 11 case. On November 28, 1988, we permitted Cohen to withdraw his appearance as counsel for the Debtor and the Debtor to enter his appearance *pro se*. The instant Application of Major, reportedly filed May 29, 1990, but not appearing on the docket, now seeks to employ the services of Major to act as the Debtor's co-counsel while he retains his *pro se* status.

The Debtor appears to continue to contend that our Order of March 9, 1989, in Adv. No. 89–0175S, *aff'd*, C.A. No. 89–1998 (E.D.Pa. March 17, 1989), *aff'd*, No. 89–1231 (3d Cir. May 4, 1989), as described in *Trinsey I*, at 87, which enjoined him from continuing to accept and expend large sums of money in flagrant violation of the Bankruptcy Code prior to that date, effectively denied him counsel. He also contends that we persisted in denying him counsel in an Order of June 21, 1989, when he requested permission to use "$50,000 to $150,000" from his estate to retain counsel who had not filed an application to represent him. However, in fact, the March 9, 1989, Order had no direct relationship with appointment of counsel for the Debtor. Further, at the time of the entry of the June 21, 1989, Order, we noted that we acted without prejudice to a later, proper application. We denied that application only because (1) the application was too vague as to what services were to be performed; (2) it was unclear whether the counsel named was willing to accept an appointment; and (3) the Debtor failed to convince us that the estate would be benefitted in any way thereby, since he refused to describe the parameters of the projected employment.

■ The instant Application and the subsequent pleading filed by the Debtor in support thereof are only too revealing in describing the services to be performed by Major. Recited therein are objections to a series of Orders denying the Debtor's parade of mostly frivolous and often vituperative attacks on the Trustees, their counsel, this court, and the district court, the latter of which has affirmed all of our Orders and entered Orders of its own allowing the sale of Gulph Woods' major asset, the Rebel Hill Development, and which have been in turn affirmed on all known appeals from its orders. Certainly, it would not be of benefit to the Debtor's estate or to anyone to allow Major to attempt to collaterally

attack or relitigate the Debtor's most exaggerated examples of windmill-tilting. Moreover, the Application itself, allegedly prepared by Major, reads suspiciously like the handiwork of the Debtor, which causes us to observe, as we have of other pleadings presented by Major since her presence on the scene, that it is quite possible that she is simply lending her name to pleadings prepared by the Debtor. Such practices, if perpetuated, would almost certainly justify sanctions under Bankruptcy Rule ("B.Rule") 9011 against Major.

Baehr and the Resolution Trust Co. ("RTC"), the Receiver of Nassau Savings and Loan Association ("Nassau")[1] filed Objections to the Application to employ Major on June 11, 1990, and June 7, 1990, respectively. Baehr objects because the Application calls for Major to receive a $35,000 retainer from Gulph Woods' estate, as opposed to the Debtor's estate. Further, Baehr believes that the Debtor's estate will not receive any benefit from the Debtor's retention of counsel because the interests of the estate are already adequately represented by him and his counsel.

RTC objects to the Application on the same grounds as Baehr and also because it does not specify the services to be performed by Major as co-counsel to a *pro se* individual or the source of her compensation beyond the initial retainer.

These Objections have some merit, but they fail to confront the more fundamental of the Application's deficiencies.

## C. DISCUSSION OF PERTINENT LEGAL ISSUES

### 1. *Court Approval Is Not Necessary For Major to Represent the Debtor in His Own Case or the Gulph Woods Case.*

■ The Bankruptcy Code, at 11 U.S.C. § 327(a), requires that a trustee, or, in accordance with 11 U.S.C. § 1107, a debtor-in-possession, must obtain court approval be-

---

1. One of the Debtor's current vigorous "windmill-tilts," to which Major has unfortunately and perhaps instructively lent her name, is a purely frivolous effort to attempt to prove that counsel representing RTC, which had also previously represented Nassau, is not authorized to do so.

This campaign has led the Debtor to attempt to depose RTC personnel and for us to enter orders prohibiting such discovery abuses. The Orders were predictably appealed by the Debtor, with Major unfortunately lending her name thereto.

fore employing any professional person, including an attorney. However, the weight of authority clearly establishes that this Code section does not apply to a Chapter 7 debtor desiring to retain counsel on its own behalf. Our suggestion to the contrary, in *In re Greater Pottstown Community Church of the Evangelical Congregational Church*, 80 B.R. 706, 709–10 (Bankr. E.D.Pa.1987), was made without our awareness of the controlling law.

The Third Circuit Court of Appeals addressed this issue in *In re Designaire Modular Home Corp.*, 517 F.2d 1015, 1018–19 (3d Cir.1975), a pre-Code case, and concluded that court approval is required only for appointment of counsel for the receiver or a debtor-in-possession in a Chapter 7 case. The court stated, *id.* at 1019, that

> [w]hen an attorney is functioning in a capacity in which he is the functional equivalent of the attorney for a receiver his appointment must be approved by the court. *But* when he is functioning for the Chapter XI debtor, ... his appointment need not have the prior approval of the bankruptcy court.

In *In re Andy Gibb Organization, Inc.*, 81 B.R. 699 (Bankr. S.D.Fla.1987), the Chapter 7 debtor filed an *ex parte* Motion for Approval to Employ Attorneys. The court denied the Motion "without prejudice to the debtor dealing with attorneys, pursuant to 11 U.S.C. § 329" stating that "[n]o provision exists in chapter 7 requiring a debtor to obtain court approval to employ an attorney." *Id.* at 699.

Consistent with this result is *In re Coastal Equities, Inc.*, 39 B.R. 304 (Bankr. S.D.Cal.1984), which involved an involuntary Chapter 7 case converted to a Chapter 11. The court concluded that "court approval of an attorney for the debtor [was] not required" in two circumstances: (1) prior to the conversion of the case, when the debtor was a Chapter 7 debtor; and (2) after conversion of the case to Chapter 7 and the appointment of a trustee when the debtor became a "debtor out of possession." *Id.* at 310. *Accord, In re Mullendore*, 527 F.2d 1031, 1035 (10th Cir.1975) (court approval of counsel for a debtor is only required where the debtor is a debtor-in-possession); *In re Graham*, 74 B.R. 963,

966–67 (S.D.Ind.1987) ("There is nothing in the Bankruptcy Code authorizing or requiring the appointment of counsel for a debtor [in a Chapter 7 case]") *In re Spencer*, 48 B.R. 168, 171 (Bankr.E.D.N.C.1985) ("a debtor may retain counsel without court approval (11 U.S.C. § 329)"); and *In re Roberts*, 46 B.R. 815, 822 (Bankr. Utah 1985), *aff'd in part & modified in part*, 75 B.R. 402 (D.Utah 1987) ("[T]here is no requirement for court approval of a Chapter 7 debtor's employment of an attorney.").

The same principles are echoed in 2 COLLIER ON BANKRUPTCY, ¶ 327.07, at 327–61 (15th ed. 1989), as follows:

> Under the Code, as under prior law, court approval is not necessary for the appointment of an attorney for the debtor in a liquidation case or an attorney for the debtor out of possession in a reorganization case.

Therefore, we conclude that, were the conditions to same recited in her Application absent, Major could have proceeded to represent the Debtor in both his own case and the Gulph Woods case without being appointed by this court. However, these conditions—particularly her desire to be appointed "co-counsel" with the Debtor and her desire to be paid a liberal retainer from the Gulph Woods estate at a pre-established, overly-liberal hourly rate of compensation—require us to conclude that she may not be appointed under such conditions.

2. *The Debtor Is Not Entitled To "Hybrid Representation," i.e., the Debtor Cannot Proceed Pro Se And Be Represented by Major, as His Counsel at the Same Time.*

Statutory law provides that a party may represent himself or herself or be represented by counsel, but not both. The issue is thusly addressed in 28 U.S.C. § 1654:

> § 1654. Appearance personally or by counsel
>
> In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein.

Section 1654 is written in the disjunctive, *i.e.*, a party may represent himself *or* be represented by counsel. This section does not confer a right upon a party to do both simultaneously, which is often called "hybrid representation."

Our district court reviewed 28 U.S.C. § 1654 in *Move Organization v. City of Philadelphia*, 89 F.R.D. 521 (E.D.Pa.1981). In *Move Organization*, the plaintiffs were represented by counsel and desired to represent themselves as well. The court refused to permit such hybrid representation, concluding, *id.* at 523 n. 1, that

[b]ecause plaintiffs appear for themselves and are represented by counsel, they have "hybrid" representation to which they are not entitled under 28 U.S.C. § 1654. *See, e.g., United States v. Daniels*, 572 F.2d 535, 540 (5th Cir. 1978); *United States v. Hill*, 526 F.2d 1019, 1024–25 (10th Cir.1975), *cert. denied*, 425 U.S. 940, 96 S.Ct. 1676, 48 L.Ed.2d 182 (1976). I therefore ordered that all plaintiffs' filings be made by their attorney of record.

In *United States v. Zielie*, 734 F.2d 1447 (11th Cir.1984), *cert. denied*, 469 U.S. 1189, 105 S.Ct. 957, 83 L.Ed.2d 964 (1985), the defendant in a RICO and drug action requested permission to represent himself during part of the trial and be represented by counsel for the remainder. The District Court denied this request and the Circuit Court affirmed, concluding, *id.* at 1454, that

[28 U.S.C. § 1654] does not give the criminal defendant the right to a hybrid representation, *i.e.*, partly by counsel and partly by himself. Courts have consistently interpreted the statute as stating a defendant's rights in the disjunctive. *United States v. Shea*, 508 F.2d 82, 86 (5th Cir.), *cert. denied*, 423 U.S. 847, 96 S.Ct. 87, 46 L.Ed.2d 69 (1975); *United States v. Lang*, 527 F.2d 1264 (4th Cir. 1975); *Duke v. United States*, 255 F.2d 721 (9th Cir.1958).

*Accord, Daniels, supra*, 572 F.2d at 540 (courts interpret 28 U.S.C. § 1654 in the disjunctive); and *Shea, supra*, 508 F.2d at 86 (under 28 U.S.C. § 1654, the defendant "had a right to appear *pro se* or to be represented by counsel, but did not have a right to a hybrid representation, partly by counsel").

Rather than prohibiting hybrid representation, some courts have concluded that, while 28 U.S.C. § 1654 does not provide that parties have a "right" to hybrid representation, it is within the court's discretion to allow such representation. In *O'Reilly v. New York Times Co.*, 692 F.2d 863, 868 (2d Cir.1982), the court stated that

the rights of self-representation and representation by counsel "cannot be both exercised at the same time." *United States v. Mitchell*, 137 F.2d 1006, 1010 (2d Cir.1943), *cert. denied*, 321 U.S. 794, 64 S.Ct. 785, 88 L.Ed. 1083 (1944). Although a trial judge may in his discretion permit a party to enjoy both halves of the statutory right, *see United States v. Swinton*, 400 F.Supp. 805, 806 (S.D.N.Y. 1975), ..., Section 1654 does not itself confer any right to "hybrid representation." (citations omitted). Thus, a party seeking to assert his statutory right to self-representation must clearly and unequivocally discharge any lawyer previously retained.

In *Hill, supra*, 526 F.2d at 1024–25, the court concluded that the Sixth Amendment does not provide a constitutional right to hybrid representation. Further, the court reiterates that, since 28 U.S.C. § 1654 is written in the disjunctive, no statutory right of hybrid representation is accorded. The *Hill* court does conclude, however, that a trial judge is not foreclosed "from allowing hybrid representation in appropriate cases." *Id.* at 1024.

Thus, some courts, in their discretion, have permitted a *pro se* party to have "standby counsel to merely advise or to give the accused meaningful technical assistance in presentation of the defense." *United States v. Coupez*, 603 F.2d 1347, 1351 (9th Cir.1979). These cases, however, are typically criminal cases, and standby counsel is permitted only because, if the accused desires counsel mid-trial, counsel is prepared to step in and continue forward from that point and the trial need not start over. The instant case, being a civil bankruptcy proceeding rather than a criminal proceeding, is not the type of case in which

any courts, to our knowledge, have exercised their discretion to permit hybrid representation. There is no constitutional right to counsel in a bankruptcy case, as in a criminal case. *See In re Martin–Trigona*, 737 F.2d 1254, 1260–61 (2d Cir.1984), *cert. denied*, 474 U.S. 1061, 106 S.Ct. 807, 88 L.Ed.2d 782 (1986); and *In re Cann & Saul Steel Co.*, 86 B.R. 413, 416–17 (Bankr. E.D.Pa.1988). *Cf. United States v. Kras*, 409 U.S. 434, 445–48, 93 S.Ct. 631, 637–39, 34 L.Ed.2d 626 (1973). Moreover, a corporate officer has no right to appear *pro se* in his corporation's bankruptcy case. *See In re WHET, Inc.*, 750 F.2d 149 (1st Cir. 1984).[2]

■ The Debtor, therefore, may not represent himself and be represented by Major simultaneously. Major's employment can hence be permitted only if she enters her appearance for the Debtor in his own case and/or the Gulph Woods case; undertakes the supervisory duties of her client that the office of counsel requires, *see* B.Rule 9011; and the Debtor refrains entirely from representing himself *pro se*. We also note that, even if this were the type of case where a court could exercise its discretion to permit hybrid representation, we would decline to do so, in light of our observations at page 831 & n. 1 *supra* and pages 835–36 *infra*, that the combination of the Debtor and Major has displayed a propensity to abuse this status.

3. *A Chapter 7 Debtor's Counsel May Be Compensated from the Debtor's Estate Only for Services Which Are Proven Beneficial to the Debtor's Estate and Which Are Non–Duplicative of Services Provided by the Trustee's Counsel; Major Would Be Entitled to Compensation Only on This Basis and Not on the Terms Which She Requests.*

A Chapter 7 debtor's attorney may be compensated for services from the debtor's

estate. Compensation of a debtor's attorney from this source, is, however, subject to close scrutiny of the court pursuant to 11 U.S.C. §§ 329 and 330.

Section 330 provides that

(a) After notice to any parties in interest and to the United States trustee and a hearing, and subject to sections 326, 328, and 329 ..., the court may award ... to the debtor's attorney—

(1) reasonable compensation for actual, necessary services rendered by such ... attorney, ... and by any paraprofessional persons employed by such ... attorney, ... based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title; and

(2) reimbursement for actual, necessary expenses.

Section 329, referenced in § 330(a), thusly provides the court with authority to review the compensation paid or to be paid to a debtor's attorney:

§ 329. Debtor's transactions with attorneys

(a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

(b) If the compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or

---

**2.** We note that, with respect to the Gulph Woods case, we have thus far allowed the Debtor to appear to represent himself *pro se*, and we intend to do so unless his actions parallel those of the corporate officer in issue in *WHET, supra*. However, since Francis Tarquini, Esquire, and George Ditter, Esquire, have been appointed to

and apparently still do represent Gulph Woods, the Debtor will not be permitted to make any filings in any matter or appear on behalf of Gulph Woods *pro se*, as long as Messrs. Tarquini and Ditter remain counsel of record for Gulph Woods.

order the return of any such payment, to the extent excessive, to—

(1) the estate, if the property transferred—

(A) would have been property of the estate; or

. . . . .

(2) the entity that made such payment.

2 COLLIER, *supra,* ¶ 327.07, at 327–61, states the following with respect to the compensation of an attorney for a debtor other than a debtor-in-possession:

Section 330 authorizes compensation to the debtor's attorney and prescribes the standards on which the amount of compensation is to be determined. Thus the court may award the debtor's attorney "reasonable compensation for actual, necessary services" rendered by such attorney. Nonetheless, the debtor's attorney may not be compensated for services which duplicate those of the trustee or the attorney for the trustee (footnotes omitted).

The Third Circuit, in *Designaire, supra,* 517 F.2d at 1019, stated that, only when counsel for a debtor not in possession

performs services useful to the estate which do not duplicate the services of the receiver or his attorney, he may be compensated from the estate....

*Compare In re Hydrocarbon Chemicals, Inc.,* 411 F.2d 201 (3d Cir.1968) (counsel for the debtor not in possession whose services were found not to have benefitted the debtor's estate is denied any compensation).

*Coastal Equities, supra,* 39 B.R. at 310, cites *Designaire, supra,* and concludes that

[a]n attorney for a debtor, not having been previously approved by the court, may only be compensated out of the estate to the extent his services actually benefitted the estate.

*See also In re Rosen,* 25 B.R. 81, 84 (D.S.C. 1982).

■ Compensation of a Chapter 7 debtor's attorney is scrutinized more closely than the compensation of other professional persons. Congress believed that a heightened level of scrutiny was necessary because "payments to a debtor's attorney provide serious potential for evasion of creditor protection provisions of the bankruptcy laws, and serious potential for overreaching by the debtor's attorney." H.R. REP. NO. 595, 95th Cong., 1st Sess. 329 (1977); S.REP.NO. 989, 95th Cong., 2d Sess. 39 (1978), U.S.Code Cong. & Admin. News 1978, pp. 5787, 5825, 6285. *See also In re Wood & Henderson,* 210 U.S. 246, 253, 28 S.Ct. 621, 624, 52 L.Ed. 1046 (1908); *In re Swartout,* 20 B.R. 102, 105 (Bankr.S. D.Ohio 1982); and *In re Perros,* 14 B.R. 515, 517 (Bankr.E.D.N.Y.1981). The disclosure requirement of § 330(a) facilitates the court's examination of the compensation arrangement under § 330(b), and § 329(b) authorizes the refund of any compensation in excess of the reasonable value of the services provided.

■ Major's Application requests that she receive a $25,000 retainer with respect to legal fees and a $10,000 retainer with respect to costs, not from the Debtor's estate, but from the Gulph Woods estate. In light of the scrutiny to which any Application of counsel of a debtor not in possession would be subject before compensation is allowed, it is doubtful whether the payment of any retainer to a Chapter 7 debtor's counsel, particularly one of the size requested here, would ever be appropriate.

However, three other factors make it particularly inappropriate for Major to receive the retainer which she requests. Firstly, she has failed to identify any services which she intends to perform which have the faintest possibility of benefitting anyone, even the Debtor himself.

In her Application for Employment, Major states that "a travesty of injustice [sic] of great magnitude has been wrongfully imposed on [the Debtor]" and that she "desires and intends to help [the Debtor] rectify the numerous injustices directed toward [the Debtor] in her capacity as co-counsel." Major then proceeds to refer to the appointment of Trustees in the bankruptcies of the Debtor and of Gulph Woods as "seemingly an error of law and an abuse of discretion." It is unclear whether Major intends to appeal these Orders, but, as she is hopefully aware, the Debtor has *already* appealed these Orders and numerous other matters

which are "travesties of injustice" [sic] (in his mind only) unsuccessfully at all possible levels. Other than to reargue the Debtor's claims of victimization, which no court has found have legal bases, it is entirely unclear what Major will do on behalf of anybody other than to serve as a sop for the Debtor's vanity.

Secondly, Major has not exhibited any awareness of the legal issues presented by these cases. Rather, she has apparently lent her name to the Debtor's *pro se* barrages of contrived outrage, expressing total misunderstanding of numerous provisions of the Bankruptcy Code.

Thirdly, difficult as it is to perceive how Major's services will benefit the Debtor's estate, it is even more difficult to perceive how Major's services will benefit Gulph Woods' estate. It is from that estate that she seeks to have her retainers be paid. It must be recalled that, in order to obtain compensation from Gulph Woods' estate, Major would be obliged to show that her services on behalf of *that* debtor have actually benefitted *that* estate.

■ Since the Gulph Woods estate is one step removed from the Debtor's own estate, it is difficult to conceive how services performed for the Debtor will benefit that estate. Furthermore, compensation to even counsel of a party who has actually made a "substantial contribution" to a Chapter 7 case is not permissible. *See* 11 U.S.C. § 503(b)(3)(D); and *In re Beck Rumbaugh Associates*, 84 B.R. 369, 371 (E.D.Pa.1988). Therefore, Major cannot be compensated from Gulph Woods' estate for services on behalf of the Debtor, even if such services, as we doubt would be the case, perchance *would* benefit Gulph Woods' estate. Hence, we are unable to conceive of how Major, even were she directed towards useful pursuits on behalf of the Gulph Woods estate and performed these services with utmost competence, could possibly be compensated by Gulph Woods' estate for services performed on behalf of the Debtor.

■ Finally, we question the propriety of the $150 hourly rate requested by Major. This court, and not counsel or the parties, has the duty to determine the hour-

ly rates to be paid to counsel for services which are compensated out of the funds of a debtor's estate. *See In re Shaffer–Gordon Associates, Inc.,* 68 B.R. 344, 350–51 (Bankr.E.D.Pa.1986). Experienced and competent counsel for trustees may be limited to a rate of $125 per hour for their services. *See In re Rheam of Indiana, Inc.,* 111 B.R. 87, 96–99 (Bankr.E.D.Pa. 1990). Compensation of $150 per hour was denied to counsel for a prestigious local law firm whose attorneys failed to document any bankruptcy experience in *In re Woerner,* 67 B.R. 685, 686–88 (Bankr.E.D. Pa.1986).

■ In her Application, Major has not recited any personal experience or expertise which would justify an hourly rate of $150 per hour. After seeing Major "in action" in the courtroom on matters related to the Debtor, we have serious doubts as to whether she in fact has the composure, ability, and experience to merit the requested rate of compensation. In any event, we are disinclined to fix an attorneys' rate until services are performed. *See In re Rheam of Indiana,* 98 B.R. 193 (E.D.Pa. 1989). We are particularly disinclined to fix Major's rate at $150 per hour at this juncture.

D. CONCLUSION: MAJOR'S APPLICATION MUST BE DENIED AND SHE MUST CLARIFY THE TERMS OF HER ENGAGEMENT IN THE CASES OF THE DEBTOR AND GULPH WOODS FORTHWITH.

We therefore have "major" problems with the Application before us and we are, therefore, obliged to deny Major's Application, insofar as she requests co-counsel status with the Debtor, retainers from the Gulph Woods estate, and compensation at a pre-determined hourly rate of $150 per hour. Further, we believe that, in light of the prohibition of "hybrid representation," it is important that Major clarify her status as counsel for the Debtor in his own case and the Gulph Woods case forthwith. Several significant matters remain before us in these cases. In particular, the trial of Adv. No. 89–1016S in the Gulph Woods case

referenced *supra* is scheduled for trial on July 25, 1990, a date selected on June 15, 1990, principally to accommodate Major, and the briefing on RTC's Motion for Summary Judgment in that case is due to be completed by July 11, 1990. It is therefore imperative that Major's status in reference to Gulph Woods and that action be clarified immediately.

We cannot and will not allow Major to represent the Debtor as his "co-counsel." Therefore, we will require that Major either enter her appearance for the Debtor in the Debtor's case, or Gulph Woods' case, or both, on or before July 6, 1990. If she does not do so, we will assume that she does not intend to participate in these cases, and she will not be heard. If she does enter her appearance for the Debtor in either of these cases, then the Debtor will be barred from representing himself and continuing to make his endless stream of *pro se* filings in the case or cases in which she appears. We also note that Major's requests for compensation and reimbursement of expenses out of either Debtor's estate will only be granted upon our granting an Application in procedural conformity with *In re Meade Land and Development Co., Inc.*, 527 F.2d 280 (3d Cir.1975); and *In re Mayflower Associates*, 78 B.R. 41 (Bankr. E.D.Pa.1987), and will be subject to strict scrutiny to determine whether her services benefitted the estate of the particular debtor from whose estate compensation is requested.

We have set the date of July 6, 1990, because it is important to resolve several matters in this case and the Gulph Woods case expeditiously. In addition to the pendency of the trial and briefing of a dispositional motion in Adv. No. 89–1016S in the Gulph Woods case, there is pending in the Debtor's case, an Application by RTC for B.Rule 2004 Examinations of the Debtor and his daughter, Hattie Eckman, to which Objections have been filed. We will schedule that matter for disposition on July 10, 1990.

The accompanying Order consistent with the conclusions reached in this Memorandum will be entered.

## ORDER

AND NOW, this 28th day of June, 1990, upon consideration of the Application for Employment, Compensation, and Retainer filed by Rania M. Major, Esquire ("Major"), and the responses objecting thereto, it is hereby ORDER AND DECREED as follows:

1. The Application shall be docketed in this case and noted as filed on May 29, 1990.

2. The Application is DENIED.

3. If Major desires to participate in this case or in Adversary No. 89–1016S or any other matter in *In re Gulph Woods Corp.*, Bankr. No. 87–03093S, on behalf of John S. Trinsey, Jr. ("Trinsey"), she shall file an Entry of Appearance in the appropriate case(s) on or before July 6, 1990.

4. If Major does in fact file such an Entry of Appearance, then Trinsey shall be barred from making any filing in any case in which she has entered her appearance unless and until Major is permitted to withdraw as Trinsey's counsel.

5. A hearing on the Application of Resolution Trust Co. in this case for Examinations under Bankruptcy Rule 2004 will be scheduled on

TUESDAY, JULY 10, 1990, at 10:00 A.M. shall be held in Courtroom No. 2 (Room 3718), United States Court House, 601 Market Street, Philadelphia, PA 19106.