911 F.2d 720
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
ANNA FARMS, INCORPORATED, Debtor-Appellant,
v.
SOVRAN BANK NA, United States Trustee, Appellees.
 No. 89-3244.
 United States Court of Appeals, Fourth Circuit.
 Argued Oct. 30, 1989.
Decided Aug. 16, 1990.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk. Walter E. Hoffman, Senior District Judge. (CA-88-730-N)
 Mark Kevin Ames, Valerie H. Bowen, Pender & Coward, P.C., Virginia Beach, Va., (argued), for appellant; Beril M. Abraham, Pender & Coward, P.C., Virginia Beach, Va., on brief.
 Monroe Kelly, III, John L. Howard, Wolcott, Rivers, Wheary, Basnight & Kelly, P.C., Virginia Beach, Va., (argued), for appellees; Joseph R. Mayes, Jacqueline A. Hoskins, Richard E. Biemiller, Wolcott, Rivers, Wheary, Basnight & Kelly, P.C., Virginia Beach, Va. Stuart E. Schiffer, Acting Assistant Attorney General, William G. Kanter, Deputy Director, Appellate Staff, Civil Division, John E. Waites, United States Trustee, Debera F. Conlon, Assistant United States Trustee, John E. Logan, General Counsel, Executive Office for United States Trustees, United States Department of Justice, Washington, D.C., on brief.
 E.D.Va.
 AFFIRMED.
 Before ERVIN, Chief Judge, WIDENER, Circuit Judge, and JOSEPH H. YOUNG, Senior United States District Judge for the District of Maryland, Sitting by Designation.
 PER CURIAM:
 
 
 1
 The appellant, Anna Farms, Inc., is in the business of hog breeding and raising feeder pigs to maturity for slaughter. It began business with about 10,000 hogs on three farms, two in North Carolina and one in Virginia. Anna did not own those farms. However, it supplied the needed food and medication for the hogs and hired two caretakers, Claude and Michael Meiggs, to care for the herd on a daily basis.
 
 
 2
 Sovran Bank, N.A. loaned money to Anna Farms for the purchase of the herd, as well as for a truck and trailer to transport food and supplies to the herd. The loans were secured by a security interest in the herd, Anna's accounts receivable, inventory, farm products and a motor vehicle and trailer.
 
 
 3
 Anna Farms did not make principal and interest payments for several months and, as a result, Sovran called the loans. On May 23, 1988, Sovran repossessed all the hogs on the Virginia farm. Through the Pitt County Superior Court, Sovran attached the hogs in North Carolina. A deputy was appointed by the Camden County Sheriff's Department to care for and maintain custody of the attached property. At the time Sovran repossessed the hogs, the regular caretakers were caring for the hogs under the contract with Anna Farms.
 
 
 4
 Anna Farms filed its Chapter 11 petition in bankruptcy on May 27, 1988. On June 22, 1988, the bankruptcy court ordered the entire herd of hogs to be sold and they were sold on July 5, 1988. On October 3, 1988, the Bankruptcy Court converted the Chapter 11 filing to a Chapter 7 liquidation pursuant to 11 U.S.C. Sec. 1112(b).
 
 
 5
 On November 8, 1988, the bankruptcy court ordered Anna Farms to reimburse Sovran for the expenses it incurred in maintaining the hogs from the time they were attached until the time they were sold. The expenses totalled $158,742.93. Included were charges from the sheriff resulting from placing a 24-hour guard on the North Carolina herd.
 
 
 6
 Anna Farms appealed to the District Court for the Eastern District of Virginia alleging two grounds of error. First, it claimed the bankruptcy court erred in allowing Sovran to recover expenses for the money paid to the guards to watch over the herd. Second, it contended that it was a farmer and, therefore, the bankruptcy court erred in converting the Chapter 11 filing a Chapter 7 liquidation. The district court affirmed in an unpublished opinion. From that decision, Anna Farms appeals.
 
 
 7
 Anna Farms argues that the expenses Sovran incurred as a result of the sheriff's charges were not allowable expenses under 11 U.S.C. Sec. 503[1] for two reasons. First, rather than disputing the amount of the expenses, it asserts that the expenses should not be awarded because the actions from which the expenses resulted were not necessary. Second, it claims that Sovran's attachment violated the automatic stay resulting from Anna's filing of Chapter 11.
 
 
 8
 Anna Farms argues that the regular caretakers were responsible for the daily feeding and care of the hogs and, therefore, the guard established by the sheriff was not necessary. However, the caretakers only made daily visits to the farms to feed the hogs and were not present as security guards. There was testimony that property other than hogs had been stolen from the premises and that hog rustling occurred with some frequency. We find no error in the lower court's holding that the guards were necessary to prevent further theft.
 
 
 9
 Certain Federal Express charges were necessary for the sheriff to meet his payroll obligations and take discounts. The sheriff computed the bill for each week's services on Thursday, and Sovran's payment was required on Friday. Such charges were needed to ensure timely payments. The district court found the expenses reasonable and necessary, and we agree.
 
 
 10
 Anna Farms also contends that the automatic stay prevented Sovran from recovering these expenses. It argues that the presence of the sheriff's guards was a continuing attachment, violating the automatic stay commenced by Anna's filing of voluntary Chapter 11 proceedings. The chronology of the events, however, does not support the argument. The herd was attached on May 23, 1988. At that point, the sheriff became responsible under North Carolina law for the property under the attachment[2] and began to guard the herd against possible theft. The sheriff, under legal obligation, so guarded the hogs until they were sold on July 5, 1988. Anna Farms argues that Sovran, upon notice of the automatic stay, had a duty to relinquish possession of the attached property back to Anna Farms. Sovran, however, took steps to avoid violating the automatic stay. At least in part, because it was apparently concerned with preserving its collateral, Sovran promptly, on June 15, 1988, filed a motion in the bankruptcy court asking for continued attachment of the hogs or, in the alternative, assurance that if possession was returned to Anna Farms, the hogs would be properly cared for. The court, however, did not rule upon the motion; rather, it ordered the hogs sold. Subsequently, when contesting the reasonableness of expenses before the bankruptcy court, Anna Farms raised the issue that the sheriff's presence violated the automatic stay. The bankruptcy court did not find the attachment to be a violation of the automatic stay, stating the sheriff "was there under a legal process, and something would have to move him." The district court found the logic persuasive. We are also satisfied the analysis is correct. The sheriff had a legal obligation to protect the collateral until such time as bankruptcy removed that obligation. This was done when the bankruptcy court ordered the hogs sold. Thus, the sheriff's presence did not violate the automatic stay. We emphasize there was no recalcitrance on the part of the sheriff, and no inordinate delay.
 
 
 11
 In sum, we find no error in the conclusion of the district court that the expenses Sovran incurred as a result of the sheriff protecting the property were reasonable and necessary. We are further of opinion that the sheriff's presence did not violate the automatic stay initiated by the Chapter 11 filing.
 
 
 12
 The next assignment of error raised by Anna Farms is that the district court erred in its order converting the Chapter 11 petition to a Chapter 7 liquidation without the consent of the debtor, required by 11 U.S.C. Sec. 1112(c). The district court held that it could not consider this question because Anna Farms "failed to argue to the bankruptcy court that it was a farmer and that its ... motion for a conversion to a Chapter 7 liquidation should be denied on this ground."
 
 
 13
 On the facts of this case in which, inexplicably, none of the attorneys present at the hearing brought Sec. 1112(c) to the attention of the bankruptcy judge, and the bankruptcy judge, just as inexplicably, did not bring that code section to the attention of the attorneys, we are of opinion that the action of the district court appealed from is not reversible error. See In Re: Daikin Miami Overseas, Inc., 868 F.2d 1201 (11th Cir.1989).
 
 
 14
 The order of the district court appealed from is accordingly
 
 
 15
 AFFIRMED.
 
 
 
 [1]
 The Bankruptcy Code allows the recovery of "the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case...." 11 U.S.C. Sec. 503(b)(1)(A)
 
 
 [2]
 The General Statutes of North Carolina provide:
 The sheriff is liable for the care and custody of personal property levied upon pursuant to an order of attachment just as if he had seized it under execution. Upon demand of the sheriff, the plaintiff shall advance the sheriff from time to time such amount as may be required to provide the necessary care and to maintain the custody of the attached property. The expense so incurred in caring for and maintaining custody of attached property shall be taxed as part of the costs of the action.
 N.C.Gen.Stat. Sec. 1-440.35 (1983).